Anthony J. Dreyer
David M. Lamb
Michael C. Salik
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Tel.: (212) 735-3000

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| METACAPITAL MANAGEMENT, L.P., )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>META PLATFORMS, INC., )<br>  )<br>  Defendant.  )<br>  )<br>  )<br>  ) | No. _____<br><br>**COMPLAINT** |

### METACAPITAL MANAGEMENT, L.P.'S COMPLAINT

Plaintiff Metacapital Management, L.P. ("Metacapital") by its attorneys, for its Complaint against Defendant Meta Platforms, Inc., f/k/a Facebook, Inc. ("Defendant" or "Facebook"), upon personal knowledge as to its own acts and conduct and on information and belief as to all other matters, states and alleges as follows:

### INTRODUCTION

1.      This is an action alleging trademark infringement in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), common law trademark infringement, and false advertising in violation of N.Y. Gen. Bus. Law § 350.

2.      This action concerns Facebook's blatant and willful disregard of Metacapital's longstanding trademark rights.  Since 2001, Metacapital has provided industry-leading financial management and advisory services, particularly in the mortgage and structured credit markets, under its METACAPITAL trademark (the "METACAPITAL Mark").

3.      Over the past 20 years, Metacapital has earned a well-deserved reputation for its outstanding service and has been recognized in various rankings of the nation's top funds, including by Bloomberg, Barron's, and BarclayHedge, and has received numerous Absolute Return Awards.

4.      Moreover, since its inception, Metacapital has routinely used the shorthand "Meta" to refer to itself (the "META Mark"), and consumers have come to associate Metacapital and its services with the META Mark (the METACAPITAL Mark and the META Mark are collectively referred to herein as the "Marks").

5.      As a consequence of its continuous, extensive, and well-publicized use of the Marks, particularly within the financial services industry, and the substantial goodwill that Metacapital has built as a result of its outstanding service, Metacapital has acquired strong trademark rights in the Marks.

6.      On October 28, 2021, Facebook announced that it was changing its name from Facebook, Inc.—which it had used for over 17 years—to "Meta."  Facebook had been hyping this name change for several days leading up to the announcement, and the change was announced in connection with Facebook's much-anticipated annual conference, Facebook Connect 2021.  Accordingly, the announcement was highly publicized and purposefully designed to garner maximum attention from the press and the public.

7.      Although Facebook has been largely known as a social media platform for the majority of its existence, in the past several years it has become increasingly clear that Facebook plans to expand its reaches into several other sectors, including the financial services sector.

8.      For example, as early as 2019, Facebook was publicly promoting new initiatives that had the explicit goal of enabling universal access to all types of financial services, including with Facebook's founder and CEO, Mark Zuckerberg, providing testimony to Congress on Facebook's plans for expansion into the financial services sector.

9.      Additionally, in 2020, Facebook created a new unit devoted to financial services—Facebook Financial.  Over the course of the past two years, this unit has increased in importance for Facebook, and changed from Facebook Financial to Novi to, most recently, Meta Financial Technologies.

10.      Indeed, as a sign of the importance Facebook places on its financial services business (and the value it places on using the "Meta" name in association with financial services) in December 2021 Facebook publicly confirmed that it paid $60 million to purportedly acquire the trademark rights of a regional bank named Meta Financial Group—rights junior to those of Metacaptial.

11.      Facebook's use of the "Meta" mark in connection with financial services—and clear plans to continue and expand such use in connection with these and similar services—is likely to cause significant harm to Metacapital's business.

12.      Facebook, however, appears wholly unconcerned about how its actions might impact Metacapital, believing instead that it is entitled to introduce its "Meta" mark into any sector it chooses with impunity.  Given that Facebook was aware of Meta Financial Group

and its purported rights (which post-date Metacapital's priority by at least two years), it is not credible that Facebook was also not aware of Metacapital.

13.     Nonetheless, Facebook brazenly moved forward with its rebranding of its financial services unit with the "Meta" name, regardless of Metacapital's superior rights.

14.     Moreover, although Metacapital informed Facebook in May of this year that Facebook's actions were likely to cause confusion with Metacapital's business, Facebook drug its feet and refused to make any meaningful efforts to avoid such confusion.

15.     In short, Facebook has shown a blatant disregard for Metacapital's rights, and its actions have already begun to deteriorate the goodwill that Metacapital has built in the Marks for over two decades.  If Facebook's infringing activities are not enjoined, such actions will continue to cause significant confusion among consumers and irreparable harm to Metacapital.

16.     Additionally, given Facebook's looming, near ubiquitous presence across various industries and sectors, including in the field of financial services, consumers are likely to believe, incorrectly, that Metacapital is associated with Facebook for the rest of Metacapital's corporate existence, or else is attempting to trade off of and infringe on Facebook's purported rights, causing further substantial harm to Metacapital.

## PARTIES

17.     Plaintiff Metacapital is an entity organized under the laws of Delaware, maintaining its principal place of business at 152 W. 57th St., 8th Floor, New York, NY 10019.

18.     Defendant Facebook is a Delaware Corporation, maintaining its principal place of business at 1601 Willow Road, Menlo Park, CA 94025.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over the Lanham Act claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has subject matter jurisdiction over the related state law claims raised in this action pursuant to 28 U.S.C. §§ 1338(b) and 1367.

20.     This Court has personal jurisdiction over Facebook because Facebook has transacted a substantial amount of business in this District, Facebook maintains a systematic presence in this District, and Facebook is registered to do business in the State of New York.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims asserted herein occurred in this District, and 28 U.S.C. § 1391(d).

## STATEMENT OF FACTS

**Metacapital's Background**

22.     Metacapital was founded in 2001, and over the past two decades has established itself as an industry-leading investment advisory firm specializing in the mortgage and structured credit markets, including fixed income relative value trading, structured credit, directional rates trading, equities trading, and, most recently, carbon-related trading.

23.     Metacapital offers various services to its clients including investment management services, investment advisory services, asset management services, and investment strategy services.

24.     In addition, over the past two years Metacapital has been working to expand its service offerings to include exchange-traded funds, or ETFs.

25.     As a result of its outstanding performance, Metacapital has been repeatedly recognized in various rankings of the nation's top funds, including by Bloomberg Markets, Barron's, and BarclayHedge, and has received numerous Absolute Return Awards.

26.     Metacapital's clients include or have included both individuals as well as major financial institutions such as CitiBank, Barclays, J.P. Morgan, Morgan Stanley, Wells Fargo, Bank of America, Goldman Sachs, Credit Suisse, and others.  Metacapital also works with various large global pension funds, family offices, insurance companies, and hedge funds.

27.     Over the last ten years, the value of investments managed by Metacapital has averaged over $6 billion annually.

28.     Metacapital has also received substantial unsolicited media attention, and has been featured on CNBC, Bloomberg TV, and Albourne TV.  In addition, Metacapital representatives have spoken at numerous industry conferences and panels, including those organized by SALT, Bloomberg, and ALTSV.

**The METACAPITAL Mark and the META Mark**

29.     Since its founding in 2001, Metacapital has continuously used the METACAPITAL Mark in connection with its financial services business.

30.     In February 2002, Metacapital applied for and obtained U.S. Trademark Registration No. 2,720,780 covering the mark METACAPTIAL MANAGEMENT for financial services, namely, investment advisory services, investment management services and asset management services (the "Metacapital Management Registration").  A copy of the Metacapital Management Registration is attached hereto as Exhibit A.

31.     Metacapital subsequently applied for and obtained U.S. Trademark Registrations covering the marks METACAPITAL (U.S. Trademark Registration No. 4,338,215; the "Metacapital Registration") and M METACAPITAL (U.S. Trademark Registration No.

4,338,621; the "M Metacapital Registration," and together with the Metacapital Management Registration and the Metacapital Registration, the "Registrations"), both for financial services, namely, investment advisory services, investment management services and asset management services.  A copy of the Metacapital Registration is attached hereto as Exhibit B and a copy of the M Metacapital Registration is attached hereto as Exhibit C.

32.     The Registrations are based on a first use in commerce date of November, 2001, and all of the Registrations are incontestable.

33.     In addition, since its inception, Metacapital has routinely used the shorthand "Meta" to refer to itself, and Metacapital's clients and potential clients have adopted this shorthand as well.

34.     Metacapital's use of the META Mark is arbitrary in connection with its financial services offerings.

35.     Metacapital has spent tens of millions of dollars in advertising, marketing, and promoting its services offered under the Marks, including through its website (metacapital.com), at trade conferences and panels, and in industry publications.

36.     The Marks have been consistently displayed to Metacapital's consumers since at least as early as 2001, both digitally and in the real world—including in marketing and pitch materials, social and mainstream media, and the internet-at-large.

37.     Throughout its history, Metacapital has transacted at least $2 trillion in business under the Marks.

38.     As a result of the above extensive, continuous, and well-publicized uses, the Marks have come to be associated with Metacapital in the minds of consumers, and

Metacapital has acquired strong trademark rights in the Marks.  In addition, Metacapital has acquired secondary meaning in the META Mark.

**Defendant's Adoption of the Infringing Mark**

39.     On October 28, 2021—nearly twenty years after Metacapital first started using the Marks—Facebook announced that it was changing its corporate name from Facebook, Inc. to Meta Platforms, Inc., and that it was rebranding itself as simply "Meta."

40.     In the days and weeks leading up to this announcement, Facebook had been teasing this rebranding in an effort to create buzz around its new name and image.

41.     Facebook made the announcement in connection with its Facebook Connect annual conference, thereby ensuring that it would receive as much media and consumer attention as possible.

42.     Along with adopting the brand name "Meta," Facebook has begun to use the word "meta" as a prefix for certain branded experiences and services it plans to introduce in the future.  Facebook now uses the "Meta" name as an umbrella corporate trade name covering all of its goods and services, including in the financial services sector.

**Facebook's Unequivocal Plans to Expand into the
Financial Services Sector Using the META Mark**

43.     As part of this rebranding effort, Facebook has taken a number of deliberate, concerted steps to connect its new corporate name with services in the financial services industry—including services that directly overlap with those provided by Metacapital— thereby creating a likelihood of confusion between Metacapital and Facebook and causing significant harm to Metacapital, its Marks, and its goodwill.

44.     For example, on December 13, 2021, less than two months after the "Meta" name change announcement, Facebook publicly confirmed that it had spent $60 million

to purportedly acquire the trademark assets of a U.S. regional bank named Meta Financial Group.[1]

45.    Included among these assets were a number of trademark registrations for "Meta" and "Meta"-formative marks covering financial services (the "Meta Financial Registrations"), including services that directly overlap with those covered by Metacapital's Registrations.  For example, one such registration covers the mark META for use with, *inter alia*, "investment advice and management services."[2]

46.    On information and belief, Meta Financial Group did not use any "Meta" or "Meta"-formative trademark prior to 2005, and the earliest priority date for any of the trademark registrations purportedly acquired by Facebook is June 15, 2004.  Accordingly, any rights that Facebook may have acquired post-date and are junior to Metacapital's priority in the Marks by at least two years.

47.    Additionally, Facebook did not acquire any of the physical assets of Meta Financial Group, but rather acquired only (i) company names and trade names including the word "Meta;" (ii) trademark registrations and common law rights for "Meta" and "Meta"-formative marks; (iii) "Meta" and "Meta"-formative domain names; and (iv) the goodwill associated with the foregoing.[3]  Accordingly, there is serious doubt that the purported acquisition was legally sufficient to grant Facebook any rights in the purported rights owned by Meta Financial Group.

---

[1] *See* David French & Elizabeth Culliford, *Exclusive: Facebook owner is behind $60 mln deal for Meta name rights*, Reuters (December 13, 2021) *available at* https://www.reuters.com/business/media-telecom/exclusive-facebook-owner-is-behind-60-mln-deal-meta-name-rights-2021-12-13/.
[2] *See* U.S. Trademark Reg. No. 3,072,040.
[3] Meta Financial Group, Form 8-K (Dec. 13, 2021) *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0000907471/52079c8b-0b39-4a47-9618-ceb924bca466.pdf.

48.     Regardless, Facebook's purported acquisition of the marks owned by Meta Financial Group demonstrates the minimum market value of "Meta" and "Meta"-formative marks in the financial services sector.  Further, Metacapital's Marks are more valuable than those Facebook attempted to acquire from Meta Financial Group, as they are senior to those marks.

49.     More concerningly, on January 4, 2022, Facebook filed two trademark applications with the U.S. Patent and Trademark Office for the marks META (U.S. Serial No. 97/202,620) and Design & META (U.S. Serial No. 97/202,641) covering a broad range of financial services including "investment management services" and "financial management, financial planning, financial forecasting, financial portfolio management and financial analysis and consultation" (the "Applications").  A copy of the Applications is attached hereto as Exhibit D.

50.     Such services directly overlap with those offered by Metacapital under the Marks, and in particular the Registrations—which cover "investment advisory services, investment management services and asset management services"[4]—and Facebook's use of any "Meta" mark in connection with its provision of those and other financial services set forth in the Applications is likely to cause confusion with Metacapital's existing rights.

51.     The Applications were filed under Section 1(b) of the Lanham Act, indicating that Facebook is not yet using the trademarks in U.S. commerce in connection with such services but intends to do so in the future.  In connection with such "intent to use" applications, Facebook, through its attorneys, was required to declare to the Patent and Trademark Office that it has a bona fide intention to use the mark in commerce as of the filing date in connection with all of the goods and services listed in the application.

---

[4] *See* Exhibits A-C.

52.     Facebook's intentions to use the "Meta" name in association with the provision of financial services—and in particular investment management and financial planning services—is consistent with public statements made by the company, including by its CEO and founder Mark Zuckerberg, in recent years concerning Facebook's plans for the financial services sector.

53.     Most notably, in 2019, Facebook announced the Libra Association, a cryptocurrency initiative and financial infrastructure that was founded to, in the words of Mr. Zuckerberg, "give everyone access to financial tools."[5]

54.     In connection with the Libra Association, Facebook published a white paper that explicitly noted that one of the goals of the Libra Association was to create a blockchain "to serve as a solid foundation for financial services . . . which could meet the daily financial needs of billions of people," and that their "hope is to create more access to better, cheaper, and open financial services – no matter where you are, where you live, what you do, or how much you have."[6]

55.     Furthermore, according to the Libra (subsequently renamed "Diem") website, the overall "Vision" of the project was "[t]o enable universal access to financial services."[7]

56.     The Libra/Diem project was highly publicized by Facebook, with Mr. Zuckerberg even providing testimony to Congress regarding the project and Facebook's plans for

---

[5] Mark Zuckerberg, Opening Statement to House Financial Services Committee (October 23, 2019), *available at* https://www.youtube.com/watch?v=x9jfzh4JyLg, 3:10-3:14.
[6] Libra Association Members, *An Introduction to Libra*, 5, 12 (July 23, 2019), *available at* https://sls.gmu.edu/pfrt/wp-content/uploads/sites/54/2020/02/LibraWhitePaper_en_US-Rev0723.pdf.
[7] Diem, *Vision*, https://www.diem.com/en-us/vision/ (last visited September 6, 2022).

how financial services might be provided by Facebook in the future.[8]  Additionally, over the course of the last three years, Facebook has provided numerous public updates on the status of the project, and repeatedly promoted it through its various platforms.

57.     At the beginning of this year, Facebook announced that while it was not continuing the Libra/Diem project, it will continue to explore virtual currencies and financial services in connection with its broader "Metaverse" project.[9]  Accordingly, consumers are likely to continue to encounter Facebook, and its newly-adopted "Meta" name, with the provision of financial services in the future.

58.     Additionally, as noted, Facebook also announced earlier this year that it was changing the name of its financial services unit, originally called Facebook Financial and subsequently renamed Novi, to Meta Financial Technologies,[10] further demonstrating Facebook's intentions to continue associating its "Meta" name with the provision of financial services.

59.     Facebook also recently announced the rebranding of its "Facebook Pay" service offering to "Meta Pay," further increasing the likelihood of confusion between Metacapital and Facebook.  In connection with this announcement, Stephane Kasriel, Facebook's Head of Commerce and Financial Technologies, re-emphasized Facebook's mission to

---

[8] Mark Zuckerberg, Opening Statement to House Financial Services Committee (October 23, 2019), *available at* https://www.youtube.com/watch?v=x9jfzh4JyLg.
[9] Luc Olinga, *Facebook and Mark Zuckerberg Money Project in the Works*, TheStreet.com (Apr. 6, 2022), *available at* https://www.thestreet.com/technology/facebook-zuck-buck-metaverse.
[10] Owen Thomas, *Forget 'Zuck Bucks.' The real story is Facebook's financial identity crisis*, Protocol (Apr. 7, 2022) *available at* https://www.protocol.com/fintech/meta-financial-technology-novi-facebook.

"empower everyone, everywhere to access the world's financial system to accelerate financial inclusion," and noted "the potential of the metaverse, and where it can take fintech next."[11]

**Facebook's Actions Threaten to Harm Metacapital**

60.     Facebook's use of the term "Meta," and in particular its purposeful and direct association of the "Meta" name with financial services—including services that directly overlap with those provided by Metacapital under its marks—will inevitably cause consumer confusion with the Marks, and cause severe and irreparable harm to Metacapital and the goodwill it has built up in the Marks over the past twenty years.

61.     Moreover, because of the ubiquity and near-omnipresence of Facebook, there is a substantial likelihood that anyone encountering the Marks will believe, incorrectly, that Metacapital is the junior user, and that Metacapital is either affiliated or associated with Facebook, or is attempting to trade off of Facebook's brand and is infringing on Facebook's purported rights.

62.     Given Facebook's substantial resources, and the plain fact that it purportedly acquired the trademark rights from Meta Financial Group, it is not credible that Facebook was not aware of Metacapital and its existing rights in the Marks prior to Facebook's actions described above.

63.     Nonetheless, Facebook still moved forward with its plans to adopt the "Meta" name, regardless of the consequences or harm caused to Metacapital and others.

64.     Indeed, this appears to be in line with a larger attitude on Facebook's part of giving little credence to the preexisting rights of other companies, and running roughshod over

---

[11] Aisha Malik, *Facebook Pay rebrands to Meta Pay as Zuckerberg details plans to create a digital wallet for the metaverse*, TechCrunch (June 23, 2022) *available at* https://techcrunch.com/2022/06/23/facebook-pay-rebrands-meta-pay-digital-wallet-metaverse/.

such rights, as Facebook is engaged in at least one other lawsuit in this Court for the same behavior.[12]

65.     As a result of this infringing use, Metacapital sent a cease and desist letter to Facebook in May, 2022, asking Facebook to withdraw the Applications and confirm that it would not use the "Meta" mark or any confusingly similar mark in the financial services sector. However, the parties have been unable to resolve this dispute.

66.     Accordingly, Metacapital has been forced to file this suit to protect itself and its rights.  As a result of Facebook's infringing conduct, (i) Metacapital has lost significant value of its Marks; (ii) Metacapital's goodwill and reputation have been irreparably damaged; and (iii) Metacapital can no longer present itself to its customers or the general public without being falsely associated with Facebook.

67.     Moreover, Facebook willfully disregarded Metacapital's prior rights and the harm to Metacapital's business that would be wrought by Facebook using a Meta or Meta-formative mark in connection with the provision of financial services.

---

[12] *See METAx LLC v. Meta Platforms, Inc.*, 1:22-cv-06125 (S.D.N.Y. 2022).

## FIRST CLAIM
### (Trademark Infringement Under 15 U.S.C. § 1114)

68.     Metacapital incorporates by reference the allegations in the preceding paragraphs of the Complaint.

69.     Metacapital is the owner of the Registrations described in paragraphs 30 and 31 of this Complaint.

70.     Metacapital uses the marks associated with the Registrations in commerce in connection with the provision of financial services.

71.     Metacapital's marks as covered by the Registrations are incontestable, valid, and enforceable against third parties, including Facebook.

72.     Metacapital's marks as covered by the Registrations are arbitrary, or have acquired secondary meaning.

73.     Facebook has used and/or plans to use trademarks in interstate commerce, which marks are confusingly similar to the marks covered by Metacapital's Registrations, in connection with the provision of financial services that are similar to those provided by Metacapital under the marks covered by its Registrations.

74.     Facebook's actions are likely to cause, have caused, and will continue to cause confusion, mistake, and deception in the minds of consumers as to the source or origin of Facebook's and/or Metacapital's services.

75.     Facebook acted with full knowledge that its actions would cause confusion or mistake and deceive consumers, which constitutes a willful violation of the Lanham Act.

76.     As a result of these actions, Metacapital has suffered irreparable injury and, unless Facebook's infringement is enjoined by the Court, Metacapital will continue to suffer

irreparable harm.  There is no adequate remedy at law for the harm caused by Facebook's infringing conduct.

## SECOND CLAIM
### (False Designation of Origin Under 15 U.S.C. § 1125(a))

77.     Metacapital incorporates by reference the allegations in the preceding paragraphs of the Complaint.

78.     Metacapital has and currently uses the META Mark to identify itself and the source of its services.

79.     Facebook's use of marks that are confusingly similar to Metacapital's META Mark has caused and is likely to continue to cause confusion or mistake, or to deceive consumers and potential consumers, the public, and the trade concerning an affiliation, connection, or association between Facebook and Metacapital when there is no such affiliation, connection, or association.

80.     Facebook had knowledge of Metacapital's prior rights and these unlawful activities.

81.     Facebook's activities constitute false designation of origin within the meaning of 15 U.S.C. § 1125(a).

82.     Metacapital has been injured by Facebook's false and misleading advertising in violation of 15 U.S.C. § 1125(a).

83.     Facebook acted willfully, with full knowledge of Metacapital's rights in the META Mark, and those acts constitute a willful violation of the Lanham Act.

## THIRD CLAIM
### (Unfair Competition Under 15 U.S.C. § 1125(a))

84.     Metacapital incorporates by reference the allegations in the preceding paragraphs of the Complaint.

85.     By virtue of having used and continuing to use the Marks in commerce, Metacapital has acquired trademark rights in the Marks.

86.     The Marks are distinctive, and serve to identify Metacapital as the source of the services provided under the Marks.

87.     Facebook has used and continues to use a trade name that is confusingly similar to the Marks without Metacapital's consent.

88.     Facebook's unauthorized use in commerce of a trade name that is confusingly similar to the Marks in connection with similar financial services constitutes a false designation of origin or false and misleading description or representation of goods and services in commerce, with knowledge of the falsity, which is likely to cause confusion, mistake, and deception, and in commercial advertising and promotion, misrepresents the nature, characteristics, qualities, and origin of Facebook's commercial activities.

89.     Facebook's activities, alleged herein, have a substantial economic effect on interstate commerce.

90.     Facebook's activities, alleged herein, constitute unfair competition within the meaning of 15 U.S.C. § 1125(a).

91.     Facebook acted willfully, with full knowledge of Metacapital's prior rights in the Marks, and those acts constitute a willful violation of the Lanham Act.

92.     As a result of these actions, Metacapital has suffered irreparable injury and, unless Facebook's infringement is enjoined by the Court, Metacapital will continue to suffer

17

irreparable harm.  There is no adequate remedy at law for the harm caused by Facebook's infringing conduct.

## FOURTH CLAIM
### (Common Law Trademark Infringement)

93.    Metacapital incorporates by reference the allegations in the preceding paragraphs of the Complaint.

94.    By virtue of having used and continuing to use the Marks in commerce, including in New York, Metacapital has acquired common law trademark rights in the Marks.

95.    The Marks are distinctive, and serve to identify Metacapital as the source of the services provided under the Marks.

96.    Facebook's use of a trade name that is confusingly similar to the Marks infringes Metacapital's common law trademark rights in the Marks and is likely to cause confusion, mistake, or deception among consumers.

97.    By virtue of acts complained of herein, Facebook has intentionally caused a likelihood of confusion among the public and has unfairly competed with Meta in violation of the common law of the State of New York.

98.    As a direct and proximate result of Facebook's common law trademark infringement and unfair competition, Metacapital has suffered, and, unless Facebook is enjoined by this Court, will continue to suffer irreparable injury to Metacapital's business, reputation, and goodwill in the Marks for which Metacapital has no adequate remedy at law.

99.    As a direct and proximate result of Facebook's common law trademark infringement and unfair competition, Metacapital has been forced to retain counsel to prosecute this claim and is entitled to recover its attorneys' fees and costs incurred herein.

**FIFTH CLAIM**
**(Common Law Unfair Competition)**

100.    Metacapital incorporates by reference the allegations in the preceding paragraphs of the Complaint.

101.    By virtue of having used and continuing to use the Marks in commerce, Metacapital has acquired trademark rights in the Marks.

102.    The Marks are distinctive, and serve to identify Metacapital as the source of the services provided under the Marks.

103.    Facebook has used and continues to use a trade name that is confusingly similar to the Marks without Metacapital's consent.

104.    Facebook's unauthorized use in commerce of a trade name that is confusingly similar to the Marks in connection with similar financial services constitutes unfair competition.

105.    Facebook's activities, alleged herein, have a substantial economic effect on interstate commerce.

106.    Facebook acted willfully, in bad faith, and with knowledge of Metacapital's prior rights in the Marks.

107.    As a result of these actions, Metacapital has suffered irreparable injury and, unless Facebook's infringement is enjoined by the Court, Metacapital will continue to suffer irreparable harm.  There is no adequate remedy at law for the harm caused by Facebook's infringing conduct.

## PRAYER FOR RELIEF

WHEREFORE, Metacapital respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to an Order:

1.      Finding that: (i) Facebook has violated Section 32 of the Lanham Act (15 U.S.C. § 1114); (ii) Facebook has violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (iii) Facebook has committed trademark infringement under New York common law; and (iv) Facebook has committed false advertising under New York law;

2.      Entering a preliminary and permanent injunction enjoining and restraining Facebook from using in commerce or in connection with any goods or services any mark, name, or design that creates a likelihood of confusion with the Marks and from engaging in any other acts of unfair competition;

3.      Awarding Metacapital all direct damages, indirect damages, consequential damages (including lost profits), special damages, costs, fees, and expenses incurred by reason of Facebook's wrongful acts, in an amount not less than $60 million;

4.      Awarding Metacapital treble damages sustained as a result of Facebook's willful and unlawful conduct, pursuant to 15 U.S.C. § 1117(a);

5.      Ordering an accounting by Facebook to Metacapital for any and all profits derived as a result of marketing, promoting, or selling any goods or services using any mark, name, or design that is confusingly similar to the Marks;

6.      Awarding Metacapital actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit;

7.      Awarding Metacapital pre-judgment interest on any money awarded and made part of the judgment;

8.      Awarding Metacapital the maximum punitive and exemplary damages available under New York law;

9.      Awarding Metacapital its actual costs and attorneys' fees incurred in bringing and defending this action pursuant to 15 U.S.C. § 1117(a);

10.     Cancellation of the Meta Financial Registrations pursuant to 15 U.S.C. § 1119; and

11.     Granting such other relief the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues properly triable of right by a jury.

Dated: September 7, 2022            Respectfully submitted,
New York, New York

Anthony J. Dreyer

Anthony J. Dreyer
David M. Lamb
Michael C. Salik
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Tel.: (212) 735-3000
Fax: (212) 735-2000
anthony.dreyer@skadden.com
david.lamb@skadden.com
michael.salik@skadden.com

*Attorneys for Plaintiff Metacapital Management, L.P.*