# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3097
DIRECT FAX
917-777-3097
EMAIL
Anthony.Dreyer@skadden.com

May 19, 2023

**BY ECF**
The Honorable P. Kevin Castel
United States Magistrate Judge, S.D.N.Y.
500 Pearl Street
New York, NY 10007-1312

RE: *Metacapital Mgmt, L.P. v. Meta Platforms, Inc.*, 1:22-cv-7615-PKC (S.D.N.Y.)

Dear Judge Castel:

We write on behalf of plaintiff Metacapital Management, L.P. ("Metacapital"), jointly with counsel for defendant Meta Platforms, Inc.'s ("MPI"), pursuant to Your Honor's Individual Practice 3.B and Local Civil Rule 37.2, to respectfully request a conference regarding certain disputes related to the Proposed Stipulated Protective Order and the Proposed Stipulated Order Re: Discovery of Electronically Stored Information. The parties have met-and-conferred telephonically concerning these Orders several times, most recently on May 9, 2023.

For the Court's convenience, the parties attach hereto a single draft of each proposed order, highlighted and including each party's proposed language for the disputed paragraphs (and, where practicable, highlighting indicating the points on which the parties differ).

Additionally, the parties briefly set forth their substantive positions below. The parties exchanged their written positions earlier today, simultaneously, and therefore waive their right to respond in writing to the other party's position (unless the Court solicits additional briefing):

> The Court concludes that experts and outside consultants should be subject to the same requirements for safeguarding confidential materials as named parties and their outside counsel. Submit Order for entry. (Letter Motion DE 43 is terminated.
> SO ORDERED.
> Dated: 5/25/2023
>
> *P. Kevin Castel*
> P. Kevin Castel
> United States District Judge

Hon. P. Kevin Castel
May 19, 2023
Page 2

**PROPOSED STIPULATED PROTECTIVE ORDER**

The parties principally disagree about one issue that impacts several interrelated provisions in the Proposed Stipulated Protective Order: Whether experts and other outside consultants should be subject to the same requirements for safeguarding confidential materials as the named parties and their outside counsel (as fleshed out primarily in Paragraph 7.2). The provisions impacted by resolution of this issue—and for which competing provisions are set forth in the attached draft—are:

- Paragraph 2.12
- Paragraph 7.1(e)
- Paragraph 7.2

**Metacapital's Position:**

MPI's proposed Paragraph 7.2 imposes on *all* recipients of confidential materials a number of unduly onerous technical requirements for ensuring "data security." But those requirements are both unnecessary and needlessly burdensome—particularly so for non-parties to the litigation such as consulting and testifying experts, who under MPI's proposal also would be subject to an *additional* requirement that they may "only access and review" documents on a litigant's e-discovery vendor platform. Notably, these requirements would apply to *all* confidential materials produced in this case, not simply attorneys' eyes only or other highly confidential material.

This is a straightforward trademark infringement case, and does not involve disclosure of any source code or trade secrets for which the strict obligations set forth in Paragraph 7.2 may be warranted. Indeed, at no point during the parties' multiple meet-and-confers or in any of MPI's correspondence has MPI articulated specific categories of responsive materials that would necessitate the heightened protections in Paragraph 7.2. Nor has MPI explained why the parties' commitments in the Protective Order to take reasonable measures to safeguard the security of confidential and sensitive materials—without specifying the precise method by which the parties would do so—creates any substantial risk of unpermitted disclosure.[1] In short, Paragraph 7.2 appears to impose significant burdens and costs with little, if any, demonstrable benefit.

Notwithstanding the foregoing, Metacapital offered a compromise whereby the strictures of Paragraph 7.2 would apply to the actual parties to the litigation and their

---

[1] Based on the parties' correspondence and on meet-and-confers, Metacapital suspects that MPI is insisting on this provision because it has been utilized in other litigations to which MPI is a party. But a "one size fits all" approach to myriad litigations presenting disparate concerns makes little sense.

Hon. P. Kevin Castel
May 19, 2023
Page 3

outside counsel, but would not sweep in other potential recipients of materials like experts retained specifically in connection with the litigation. Instead, such recipients would be required under Paragraph 7.1(e) to "take reasonable measures to safeguard the security and confidentiality of [confidential materials]" and execute an "Acknowledgment and Agreement to be Bound" explicitly confirming their agreement to take such reasonable measures.

Metacapital's proposal is a fair middle-ground that provides more than adequate protection. It is neither reasonable nor practical to impose the heightened requirements on third parties who will only receive a fraction of the discovery produced in this lawsuit, and who have less access to sophisticated data protection structures as the parties. Forcing experts and other third parties to only access *and review* confidential documents through the parties' e-discovery vendor platform reduces flexibility, efficiency, and the speed with which materials can be shared, and may not always be possible technologically.[2] In fact, by its terms, MPI's proposal would create the absurd result that an expert would be in breach of the Protective Order if they merely *print* any confidential materials or review and maintain any hard copies of those materials.

Finally, MPI's proposal is confusing as a matter of drafting. MPI's proposed Paragraph 2.12 would define "Party" to include not only the parties to the litigation and their outside counsel, but also "consultants" and "retained experts."[3] As just a few examples of the problems associated with this proposal, defining "Party" to include such third parties would place an affirmative obligation on consultants and experts to inform a Producing Party if they believed information was obtained or leaked without permission (Paragraph 5.2(d)), and give consultants and experts the right to challenge confidentiality designations (Paragraph 6.1).

**MPI's Position:**

Both Metacapital and MPI agree that, given the nature of the parties' businesses[4] and the scope of discovery in this case, the parties and their outside attorneys must take

---

[2]  For example: Rather than simply sharing materials with an expert via a secure FTP site or other password-protected method, the parties and counsel now may be required to segregate portions of their e-vendor platforms from others, and create more limited forms of access to experts to ensure that they are not inadvertently exposed to other confidential materials irrelevant to their retention.

[3]  Metacapital still does not understand what distinction MPI is purporting to draw between "consultants" and "retained experts," and thus proposed the parties refer to "consulting and testifying experts."

[4] Indeed, Metacapital's counsel has referred to Metacapital's business in prior discussions of the Protective Order: "Metacapital is a highly-regulated financial institution, with multiple layers of information security. Further, Metacapital's business model is premised in large part on keeping its confidential information private."

Hon. P. Kevin Castel
May 19, 2023
Page 4

reasonable measures to protect the security and confidentiality of one another's information. To that end, the parties agree that they and their attorneys will comply with Paragraph 7.2, entitled "Data Security of Protected Material."

However, Metacapital would introduce a loophole that will undermine these data security protocols by categorically exempting litigation experts from complying with reasonable cyber-hygiene. Metacapital takes the inconsistent view that while its employees and outside attorneys must reasonably protect MPI's confidential information, its litigation experts need not do the same. That is why Metacapital rejects MPI's inclusion of the phrase "consultants, retained experts" in Paragraph 2.12 and "or any person in possession of or transmitting of another Party's Protected Material" in Paragraph 7.2.[5]

The Court should adopt MPI's proposed data security language in Paragraph 7.2 because allowing litigation experts to unilaterally fail to meet reasonable data security safeguards will undermine the very protections Paragraph 7.2 is intended to provide. Metacapital seeks language that could nullify the parties' and law firms' data security safeguards by allowing sensitive information to be stored by experts whose computer systems are not required to be reasonably secure. Of great concern, experts who work in universities, small firms, or as solo practitioners often do not deploy the robust cybersecurity measures routinely found in law firms and larger organizations. Allowing Metacapital's experts to introduce a cyber-hygiene gap creates unnecessary and avoidable vulnerabilities in the age of the ubiquitous data breach. Although no system is impervious to hacking or attacks, the safeguards outlined in Paragraph 7.2 are standard protocols followed by e-discovery companies, law firms, corporations, and courts, whose very survival depends on the protection of their own, clients', and litigants' confidential information.

The parties agree that their attorneys must review confidential documents on an e-discovery platform. Similarly, MPI urges the Court to require the same prudent care of information from experts and decline to exempt litigation experts and other agents of the parties from the reasonable cyber-hygiene set forth in Paragraph 7.2 of the Proposed Protective Order.

---

[5] Paragraph 7.1(e), which contains the lesser safeguard measures that Metacapital wishes to apply to litigation experts, would not be appropriate given the risk of personal, confidential, and proprietary information being disclosed.

Hon. P. Kevin Castel
May 19, 2023
Page 5

**PROPOSED STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

**Paragraph 4(a)**

Metacapital's Position:

Metacapital is concerned about MPI's proposed Paragraph 4(a) because it could be read to abrogate the standard (and essential) obligations for parties to preserve and maintain documents in connection with litigation. In particular, Metacapital is confused about why the parties would stipulate to—and would request that the Court order—a provision indicating that the parties "are not required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data" when the very purpose of a litigation hold is to ensure that relevant materials are preserved even if those materials would have been deleted in the usual course of business (*i.e.*, in the absence of litigation).[6]

On a meet-and-confer, MPI suggested that the parties agree that all responsive materials have been and will continue to be preserved in accordance with all applicable rules and requirements. But Metacapital cannot help but be concerned about a disconnect given that MPI has rejected proposed language to render Paragraph 4(a) entirely clear on that point, and confirm that the Proposed ESI Order would not in any way limit, alter, or override the parties' preservation obligations. Indeed, that raises concerns that MPI's preservation to date has not been entirely consistent with its obligations.

More specifically, and as set forth in the accompanying Exhibit, Metacapital has proposed adding language clarifying that (1) the reference to procedures used "in the usual course of business" means "as the business normally operates when subject to a litigation hold," and (2) parties only need not modify their backing up and archiving procedures if their existing procedures "in the usual course of business" are "sufficient to comply with all document preservation obligations set forth under the local and Federal Rules in connection with the current litigation." Metacapital simply does not understand why MPI will not agree to that language, which should not be remotely controversial.

---

[6] This preservation obligation applies not only to data created prior to the commencement of litigation but also prospectively as the litigation continues. *See, e.g.*, *Gucci Am., Inc. v. Frontline Processing Corp.*, 2010 WL 11655446, at *2 (S.D.N.Y. July 2, 2010); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Accordingly, MPI's reference to not having to modify procedures "on a going-forward basis" lacks any legal basis.

Hon. P. Kevin Castel
May 19, 2023
Page 6

MPI's Position:

The Court should reject Metacapital's two proposed additions to Paragraph 4(a) because they are unclear, unnecessarily complicated, and superfluous.

Consistent with its legal obligations under relevant law, MPI took proportionate measures to preserve information potentially relevant to the claims and defenses of this matter when it reasonably anticipated litigation. However, the first phrase Metacapital proposes—"meaning as the business normally operates when subject to a litigation hold"—cannot add to, nor does it clarify, the parties' preservation obligations. As such, its meaning is at best unclear and, at worst, creates confusion about the appropriate scope of preservation. Accordingly, for the sake of clarity and predictability, the phrase should not be added to the Protective Order.

Similarly, Metacapital's second proposed addition—"provided that the parties' backing up and archiving processes in the usual course of business (subject to a litigation hold) are sufficient to comply with all document preservation obligations set forth under the local and Federal Rules in connection with the current litigation"—suffers from the same deficiencies. And its invocation of "the local and Federal Rules" merely restates the legal standards governing the parties' preservation obligations.

Metacapital's proposed second addition also appears to require the parties, for the sake of this case, to implement new data "backing up and archiving processes," rather than simply *preserving* responsive information. That is not the law. Such requirements are beyond the pale of any typical course of preservation obligations. Moreover, courts have held that backup tapes are the "paradigmatic example of an inaccessible ESI storage medium." *Al Otro Lado Inc. v. Nielsen*, 328 F.R.D. 408, 421 (S.D. Cal. 2018). Accordingly, "[a]bsent specific circumstances, preservation obligations should not extend to disaster recovery backup tapes." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (parties need not preserve "every shred of paper, every e-mail or electronic document, and every backup tape"). The Sedona Convention has similarly echoed this sentiment, stating:

> Absent good cause, preservation obligations should not extend to disaster recovery backup tapes created in the ordinary course of business. In many organizations backup tapes exist so that ESI that is lost due to system failures or through disasters such as fires or tornadoes can be restored. Thus, by definition, their contents are duplicative of the contents of active computer systems at a specific point in time, and employing proper preservation procedures with respect to the active system should render preservation of backup tapes on a going-forward basis redundant and unnecessary.

Hon. P. Kevin Castel
May 19, 2023
Page 7

The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1 (2018).[7] Similarly, the Seventh Circuit's Electronic Discovery Pilot Program specifically calls out backup tapes as a category of ESI that is generally not discoverable for a number of reasons including the fact that it is "substantially duplicative of data that is more accessible elsewhere." Seventh Circuit Electronic Discovery Pilot Program, Report on Phase One, available at https://www.uscourts.gov/file/document/seventh-circuit-electronic-discovery-pilot-program.

> But even more importantly, forcing a party to retain backup tapes unnecessarily leads to those tapes aging to a point where they can contain data that is substantially different from the data available on the active system which can make these tapes difficult or impossible to ever recycle. This defeats a company's legitimate records management program and potentially drives up the costs of unrelated, future litigation.

*Id*. The preservation obligations Metacapital seeks should not require the parties to create backup tapes for the purpose of litigation-related preservation.

MPI's proposed language is simple and straightforward. The Court should adopt MPI's proposal.

**Paragraph 5(a)**

Metacapital's Position:

Metacapital believes that in order for discovery to proceed as expeditiously as possible, the parties should reach agreement on search terms to be applied to ESI *before* production begins.  MPI's own discovery responses confirm the logic and propriety of such an approach:  MPI repeatedly has agreed to produce documents "subject to an agreement on a reasonable number of relevant custodians and narrowly tailored search terms."  Based on those representations that there would be an "agreement" on search terms, Metacapital has accepted MPI's responses as adequate, but now faces a bait-and-switch where MPI is insisting on *unilaterally* determining the "narrowly tailored search terms."

As noted in Metacapital's May 17 letter to the Court (ECF No. 40), there already have been numerous and substantial delays in discovery, making it all the more imperative that discovery proceed expeditiously.  It undermines that goal, and simply

---

[7] "Courts have found the Sedona Principles instructive with respect to electronic discovery issues." *Kairam v. West Side GI, LLC*, 2023 WL 3220159, at *1 n.2 (S.D.N.Y. Feb. 24, 2023).

Hon. P. Kevin Castel
May 19, 2023
Page 8

is not practical or efficient, to require the parties to wait until after a production has been made to discuss whether the search terms used were appropriate.

Metacapital's proposed language sets forth a reasonable schedule for the parties to negotiate appropriate search terms, and accounts for the possibility that proposed search terms will produce an untenable number of results. It presents no substantial burden, and it ensures that the parties can move quickly in searching for and producingof documents, rather than approaching e-discovery piecemeal.

MPI's Position:

ESI agreements are designed to ensure ESI is collected and produced fairly and efficiently—and with as little court involvement as possible. MPI's proposal not only provides for a process to validate the quality of the parties' search terms; it also provides Metacapital *multiple opportunities* to work with MPI to jointly analyze MPI's proposed search terms and suggest changes, in a cooperative process, that will reduce the likelihood of disputes.

Consistent with Sedona Principle Six, MPI's proposal will allow producing parties to develop their own search terms because producing parties are best situated to determine the most reasonable ways to collect, search, and review ESI. The parties will then review a statistically significant number of documents that did *not* hit on those search terms to analyze whether the search terms are omitting relevant documents. All of this information is shared cooperatively, and the party who served the discovery can request a second sampling of documents that did not hit on the search terms, then negotiate over additional search terms as it sees fit. *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 494 (N.D. Ill. 2018) ("[A] random sample of the null set provides validation and quality assurance of the document production when performing key word searches").

Metacapital's proposal, on the other hand, does not provide a process to ensure that "the proposed methodology [is] quality control tested to assure accuracy in retrieval and elimination of 'false positives.'" *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012) (citation omitted). Instead, it imposes arbitrary deadlines and procedures that will almost certainly spawn disputes requiring this Court's intervention at three junctures.

First, Metacapital's proposal calls for a motion to compel just three days after the parties have their *first conferral* about date ranges and search terms—with review of search terms done in the dark, *before* any terms have even been tested. Second, Metacapital's proposal requires the parties to disclose the number of "hits" resulting from their proposed search terms. Based solely on those hit counts—again in the abstract—the parties must again meet and confer about "a revised list of search terms." Recognizing that disputes about what constitutes a reasonable number of

Hon. P. Kevin Castel
May 19, 2023
Page 9

"hits" are inevitable, Metacapital's proposal then provides that just three days after this second conferral, the parties may once again file a motion to compel. However, search term hit counts are effectively 'all about quantity, not about quality' because search term "hits" do not show whether the documents with 'hits' are responsive and, similarly, whether the documents without 'hits' are not responsive. And third, Metacapital's proposed language provides, without identifying the decision-maker, that to the extent additional search terms "need" to be run the parties must confer and then, after three days, a third motion to compel may be filed.

By contrast, MPI's proposal is straightforward and is intended to help the parties validate one another's search terms by determining whether the proposed terms are capturing and/or omitting relevant documents. *See Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 129 (S.D.N.Y. 2015) (encouraging "quality control review of samples from the documents categorized as non-responsive"). Metacapital's proposal contains almost no quality control process and instead presents a playbook for ancillary litigation by laying the groundwork for at least three separate motions to compel, just to develop a single set of search terms.

The Court should adopt MPI's proposal.

**Paragraph 8(c)**

Metacapital's Position:

MPI seeks to create a presumption against any discovery concerning document preservation efforts. As MPI once put it on a meet-and-confer, it will not agree to "discovery on discovery." But discovery concerning the nature and adequacy of preservation activities (without delving into plainly privileged or work product protected communications) is commonplace and entirely appropriate. *See, e.g., Roytlender v. D. Malek Realty, LLC*, No. 21CV00052, 2022 WL 5245584, at **2-5 (E.D.N.Y. Oct. 6, 2022); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 115CV00211, 2018 WL 722480, at **2-3 (S.D.N.Y. Jan. 30, 2018).

Indeed, MPI's preservation activities is a topic of significant interest to Metacapital in light of both (i) the unusual position that MPI already has taken with respect to Paragraph 4(a) of the Proposed Order, as detailed above, and (ii) MPI's previously proposed paragraph (albeit later withdrawn) providing that only ESI created or received on any alleged date of first use of the relevant trademarks need be preserved. That MPI also wants to make it difficult for Metacapital to even probe preservation efforts only heighten Metacapital's concerns. As such, even if the Court accepted MPI's proposed Paragraph 8(c)—and Metacapital respectfully suggests that it should not—Metacapital already has made "a showing of good cause" sufficient to secure discovery.

Hon. P. Kevin Castel
May 19, 2023
Page 10

Equally troubling is that MPI would require the Court to preemptively determine that activities in connection with the duty to preserve information necessarily constitute protectable attorney work product (by stating that the activities are protected "under Fed. R. Civ. P. 26(b)(3)(A) and (B)"). That is incorrect as a legal matter; whether any particular activity constitutes attorney work product or not must be determined on an individual basis, *see, e.g.*, *Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 12 CIV. 3040 KBF, 2013 WL 1087234, at *3 (S.D.N.Y. Mar. 12, 2013) ("[A]ll claims for protection from disclosure [pursuant to the attorney work product doctrine] are fact specific."). There is no reason why the Court should derive a conclusion—sight unseen—that *all* activities undertaken to preserve materials secure the benefit of attorney work product protection. Such language also renders the proposed Paragraph 8(c) internally inconsistent; attorney work product protected materials are only discoverable if the party seeking discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means" (Fed. R. Civ. P. 26(b)(3)(A)(ii)), but MPI would lower the standard to merely one of showing "good cause."

Attorney work product protection is a distinct issue that all parties may reserve their rights to invoke where appropriate, and under those circumstances the parties and the Court will address the extent to which the doctrine applies. Metacapital respectfully suggests that global pre-determinations as to whether the protection exists, and modifications of the standard to obtain otherwise protected information, do not belong in an ESI Order.

MPI's Position:

Paragraph 8(c) merely requires a showing of good cause to justify any requests for discovery on discovery. This provision is largely favored in the Southern District of New York, where courts have held that discovery on discovery is appropriate only where there is a factual basis to suggest that such discovery is warranted. *See Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *6–7 (S.D.N.Y. July 14, 2016) ("requests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum. A party must provide 'an adequate factual basis' for its belief that discovery on discovery is warranted. The plaintiffs have failed to do so here."); *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014), adhered to on reconsideration, 2014 WL 4547039 (S.D.N.Y. Sept. 12, 2014) ("There are circumstances where such collateral discovery is warranted. Here, however, the plaintiffs have not proffered an adequate factual basis for their belief that the current production is deficient.… Given the absence of a legal basis for the plaintiffs' request, the motion is denied.").

Hon. P. Kevin Castel
May 19, 2023
Page 11

                \*                \*                \*

We thank the Court for its time and attention to this matter.

Respectfully submitted,

| /s/ Anthony J. Dreyer | /s/ Dennis L. Wilson |
|---|---|
| Anthony J. Dreyer<br>Jordan A. Feirman<br>David M. Lamb<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>One Manhattan West<br>New York, NY 10001<br>anthony.dreyer@skadden.com<br>jordan.feirman@skadden.com<br>david.lamb@skadden.com<br><br>*Attorneys for Plaintiff Metacapital Management, L.P.* | Dennis L. Wilson<br>Camden A. Minervino<br>Olivia Poppens<br>Kilpatrick Townsend & Stockton LLP<br>1801 Century Park East<br>Suite 2300<br>Los Angeles, CA 90067<br>dwilson@kilpatricktownsend.com<br>cminervino@kilpatricktownsend.com<br>opoppens@kilpatricktownsend.com<br><br>Nichole Davis Chollet<br>Erica C. Chanin<br>Jessica W. Truelove<br>Kilpatrick Townsend & Stockton LLP<br>1100 Peachtree Street NE<br>Suite 2800<br>Atlanta, GA 30309-4528<br>nchollet@kilpatricktownsend.com<br>echanin@kilpatricktownsend.com<br>jtruelove@kilpatricktownsend.com<br><br>H. Forrest Flemming, III<br>Kilpatrick Townsend & Stockton LLP<br>1114 Avenue of the Americas<br>Suite 2100<br>New York, NY 10036<br>fflemming@kilpatricktownsend.com<br><br>*Attorneys for Defendant Meta Platforms, Inc.* |