**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

METACAPITAL MANAGEMENT, L.P.,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

22-cv-07615 (PKC)

## ORDER ON DISCOVERY OF ELECTRONICALLY STORED INFORMATION

### 1.     PURPOSE

This Order will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.

### 2.     COOPERATION AND PROPORTIONALITY

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's rules to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties' cooperation includes propounding reasonably particular discovery requests, identifying appropriate limits to eDiscovery, including appropriate and reasonable limits on custodians, identifying relevant and discoverable ESI, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues.  The failure of counsel or the parties to cooperate in facilitating and reasonably limiting eDiscovery requests and responses will be considered in cost-shifting determinations. The parties agree to use reasonable, good faith, and proportional efforts to

preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1).

**3.     LIAISON**

Each party shall designate or make available, an individual or individuals as eDiscovery Liaison(s) who must:

    (a)     be prepared to meet and confer on eDiscovery-related matters and to participate in eDiscovery dispute resolution;

    (b)     be knowledgeable about the party's eDiscovery efforts;

    (c)     be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

    (d)     be, or have reasonable access to those who are, knowledgeable about the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**4.     PRESERVATION**

Each party is responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody or control consistent with Sedona Conference Principle 6 which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."[1] The parties have discussed their preservation obligations and needs and agree

---

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 118 (2018).

that preservation of relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a)     Parties will continue to act in accordance with their obligations to preserve information and materials potentially relevant to the current litigation, including by preserving non-duplicative, relevant information currently in their possession, custody, or control; for the avoidance of doubt, parties are not required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data.

(b)     Subject to and without waiving any protection described in Section 4(a) above, the parties agree that:

    1.     The parties have discussed the sources and types of relevant ESI they believe should be preserved;

    2.     The parties will agree on the number and identity of custodians per party for whom ESI will be preserved. The parties agree to meet and confer to discuss additional custodians as reasonably necessary (i.e., when specific evidence warrants expanding the initial custodian list).

(c)     The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and unwarranted extraordinary measures will not be taken to preserve ESI from these sources, which will be retained pursuant to standard business processes, but not otherwise preserved, searched, reviewed, or produced, unless ordered by the Court upon a motion of a party:

    1.     backup systems and/or tapes used for disaster recovery; and

2.      systems no longer in use that cannot be accessed by using systems currently in use by the party.

(d)     The following data types are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and unwarranted extraordinary measures will not be taken to broadly preserve this ESI, and instead, it will be retained pursuant to standard business processes, but not otherwise preserved, searched, reviewed, or produced, unless ordered by the Court upon a motion of a party:

1.      Voice messages.

2.      Instant messages and chats that are not chronicled to an email archive system.

3.      Sound recordings, including, without limitation, .mp3/.mp4 and .wav files.

4.      Video recordings.

5.      Information solely contained on mobile devices.

(e)     In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, need not be preserved:

1.      Deleted, slack, fragmented, or unallocated data only accessible by forensics.

2.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.      On-line data that are automatically updated such as temporary internet files, history, cache, cookies, and the like.

4.      Except as set forth in Appendix 1, data in metadata fields that are frequently updated automatically, such as last-opened or last-modified dates.

5.      Mobile device activity logs.

6.      Server, system, or network logs.

7.      Dynamic fields in databases or log files not stored or retained in the usual course of business.

8.      Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party.

9.      Other forms of ESI whose preservation requires unreasonable, disproportionate, and/or non-routine, affirmative measures that are not utilized in the ordinary course of business.

(f)      The Parties acknowledge that Meta Platforms, Inc. is subject to various privacy regulations and court orders that require the disposition of identifiable user data.  To the extent that identifiable user data subject to routine disposition as required by privacy regulations and court orders is identified as relevant to the claims or defenses in this case, the parties will meet and confer on preservation of such information as it exists at that time, including the feasibility of such preservation and the type and import of the user data implicated.

## 5.      SEARCH

The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce documents responsive to discovery.  The parties agree that as soon as practicable after the entry of

this order, they will meet-and-confer to discuss the method or methods they are employing to identify the appropriate set(s) of documents for review and production.

(a)  Search Terms: The Parties shall develop an initial list of proposed search terms to run on their own data for searching collected documents and ESI. These lists shall be exchanged within seven (7) days of the entry of this order, and the Parties agree to meet-and-confer within seven (7) days thereafter in good faith regarding any proposed modification of these lists of search terms. The search terms shall be tailored to the needs of this case. Indiscriminate terms, such as the Producing Party's name, are inappropriate unless combined with narrowing search criteria that sufficiently tailor the request. To the extent that the Parties cannot agree on the date ranges and search terms, then either side may seek resolution from the Court within five (5) days of the date of the meet-and-confer. The Parties shall promptly run a test of the proposed search terms against the ESI collected pursuant to the provisions above. After running those tests, the Parties may perform sampling of document "hits" to determine whether the search terms are proportionate or need to be modified, or whether additional data needs to be collected. To the extent necessary, the Parties agree to meet-and-confer within five (5) days of running such tests in good faith to develop lists of revised search terms that will minimize the need to review search results containing false positive search hits, and to discuss strategies to reduce the volume for review as needed. To the extent the Parties cannot agree on a set of search terms, then either side may seek resolution from the Court within five (5) days of the date of the meet-and-confer. To the extent additional search terms need to be run at a later date, either because the initial search terms did not return all relevant information or because additional discovery requests have been served, the Parties shall meet-and-confer as soon as practicable

6

regarding such additional search terms.  To the extent the Parties cannot agree on a set of additional search terms, then either side may seek resolution from the Court within five (5) days of the date of the meet-and-confer.

(b)     Nothing in this Order precludes a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's discovery requests.  Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be relevant. Further, nothing in this Order requires the production of documents captured by any search term that are not responsive to the Requesting Party's requests, privileged or otherwise protected from disclosure.

(c)     Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process.

(d)     Each party will use best to produce only a single copy of a responsive document and de-duplicate responsive ESI across Custodians.

(e)     Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

(f)      Absent agreement of the parties or a demonstration by the requesting party of specific need and a finding of good cause by the Court, no on-site inspection by the opposing party or its counsel shall be permitted..

**6.      PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

**7.      PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**8.      DOCUMENTS PROTECTED FROM DISCOVERY**

(a)      The parties have submitted a separate Order under Fed. R. Evid. 502(d) that will govern the production of documents protected from discovery.

(b)      The parties have submitted a separate Stipulated Protective Order that they intend to govern the production of confidential documents.

(c)      Communications involving or work product associated with inside or outside counsel for the parties related to this case that post-date the filing of the complaint need not be placed on a privilege log.

8

(d)     Parties agree to log only the Last In Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email.

(e)     Communications may be identified on a privilege log by category, rather than individually, if appropriate.

(f)     The parties shall furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and Local Civil Rule 26.2 for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines within 14 days of a response to a discovery request.

(g)     Nothing in this Order requires disclosure of non-responsive information or responsive information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**9.    MODIFICATION**

This Order may be modified by the Court for good cause shown.

IT IS SO ORDERED, this 31st day of May, 2023.

_____
United States District Judge

9

**APPENDIX 1: PRODUCTION FORMAT**

1.    **Production Components.**  Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

(a) an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

(b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance or Relativity);

(c) TIFF images;

(d) and document level .TXT files for all documents containing extracted full text or OCR text.

(e) Parent-child relationships will be maintained in production. Links within a document are not considered attachments.

If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2.    **Production Media and Access Controls.**  Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), and when not possible via such methods, via same-day courier or overnight FedEx on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media shall also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the producing party's

name; (d) the production date; and (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3.     **Data Load Files/Image Load Files.**  Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.  The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of

records in the data load file.  Load files shall not vary in format or structure within a production, or from one production to another.

4.     **Metadata Fields.**  Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) CUSTODIAN, (g) ALLCUSTODIAN(S), (h) CONFIDENTIALITY, (i) REDACTIONS, (j) NATIVEFILEPATH, (k) TEXTFILEPATH, and (l) HASHVALUE, which should be populated by the party or the party's vendor.  The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to document |

| Field Name | Field Description |
|---|---|
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FILENAME | Filename of an electronic document |
| FILEPATH | Original path to the individual source file. Includes path up to and including internal path of containers |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM SS) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTIONS | Indicate Yes/No if document redacted |

5.     **TIFFs.**  Documents that exist only in hard copy format shall be scanned and produced as TIFFs.  Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below.  The parties shall take reasonable efforts to process presentations (*e.g.* MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document.  Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

6.     **Color.**  The parties may request color copies of a limited number of documents where color is necessary to accurately interpret the document.

7.     **Text Files.**  A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename.  When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

8.     **Native files.** Spreadsheets (*e.g.* MS Excel) will be produced in native format unless redacted, in which instance, spreadsheets will be produced in TIFF with OCR Text Files.  To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above.  A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

9.     **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

10.     **Databases and Other Structured Data.**  The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information.  To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.  To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties

shall meet and confer to reach an agreement on alternative methods to enable the

requesting party to view the ESI.