Defendant Meta Platforms shall respond to the December 20,
2023 discovery dispute letter by January 8, 2024.
SO ORDERED.
Dated: 12/21/2023

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
————
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3067
DIRECT FAX
917-777-3067
Email
JORDAN.FEIRMAN@skadden.com

December 20, 2023

**BY ECF**
Honorable P. Kevin Castel
United States District Judge, S.D.N.Y.
500 Pearl Street
New York, New York 10007-1312

RE:    *Metacapital Mgmt, L.P. v. Meta Platforms, Inc.*, No. 1:22-cv-7615(PKC)
       Request for Status Conference

Dear Judge Castel:

        In accordance with Your Honor's Individual Practice 3.B and Local Civil Rule
37.2, Plaintiff Metacapital Management, L.P. ("**Metacapital**") respectfully requests
that the Court schedule a Status Conference at its earliest convenience to:  (1) address
continuing delays and deficiencies in discovery provided by Defendant Meta
Platforms, Inc. ("**MPI**") and its subpoenaed affiliate represented by the same counsel,
Beige Key LLC ("**Beige Key**"); and (2) award Metacapital any just and appropriate
relief to prevent undue prejudice as the February 26 fact discovery deadline
approaches.

        Metacapital has undertaken every effort to try to avoid involving the Court,
including exhaustive meet-and-confers in good faith (which we certify took place most
recently on December 7), written exchanges, and compromises.  But Metacapital has
strong reason to suspect that MPI is "running out the clock."  As detailed herein, MPI's
production to date remains strikingly small, it delayed months in identifying 30(b)(6)
witnesses, and it has repeatedly failed to follow through on promises about
forthcoming discovery (often made only after Metacapital raises the prospect of
motion practice).  It also has been suggested this week that Beige Key is "considering"
moving to quash a three-month old deposition subpoena to which no objections were
ever served, but it is not prepared to confirm whether it will actually do so.

Hon. P. Kevin Castel
December 20, 2023
Page 2

Although MPI has indicated that it will meet the January 12 deadline for substantial completion of production, that does not excuse its failure to engage in proper and substantial rolling productions, and, as detailed below, MPI has suggested that forthcoming productions will not be voluminous—a suggestion that makes little sense given the broad scope of materials it has agreed (or been ordered) to produce. Just as it did in September when seeking an extension of the case schedule, Metacapital faces the prospect of being left with little time to pursue follow-up discovery, identify deponents, and have necessary information for depositions and expert analyses.

Unfortunately, MPI's (and Beige Key's) history of delays is extensive, and we believe it is important for the Court to appreciate why Metacapital no longer believes it can provide MPI with any benefit of the doubt. With apologies for the length of this letter, Metacapital provides the following exemplars of the conduct at issue:[1]

## A.  MPI's Discovery Delays

### 1.  Delays in Document Production

In a December 1 letter to MPI, Metacapital laid out many discovery deficiencies, including MPI's repeated failures to comply with its representations:

- In the *eleven* months since Metacapital first served discovery requests, and months after an unnecessarily protracted period of resolving a host of meritless objections, MPI had as of December 1 produced a total of only approximately 6,500 pages—much of which were publicly available materials.[2] Dozens of requests for production have gone unaddressed.

- The most recent MPI production had taken place over two months prior on October 4, comprising under 1,200 pages. On the December 7 meet-and-confer,

- MPI's lack of production cannot be squared with numerous representations made to Metacapital in the interim, including:

---

[1]     Quotations are taken from written exchanges between counsel or with the Court, with emphases added. Metacapital can provide copies of communications if the Court wishes.

[2]     This is a tiny fraction of the over 250,000 pages produced by Metacapital. On the December 7 meet-and-confer, MPI suggested that this disparity was due to Metacapital's production dating back two decades while the bulk of MPI's discovery only would date back a few years. That argument, however, makes no sense given both (1) the sheer size of MPI and its operations, and (2) the scope of the subject matter for which MPI is obligated to search for and produce materials. To be sure, MPI may lack responsive documents for certain categories, but there are many categories for which that cannot possibly be the case.

Hon. P. Kevin Castel
December 20, 2023
Page 3

o    When Metacapital requested an extension of the case schedule in
     September, it relayed MPI's representation that the "bulk of emails and
     chats responsive to Metacapital's first set of document requests" would be
     produced by the end of that month. (ECF No. 61 at 2.) That did not happen,
     and to the extent that MPI is contending that its October 4 production
     constitutes the "bulk" of responsive emails, the tiny size of the production
     cannot be squared with MPI's discovery obligations.[3]

o    In a September 11 email, MPI indicated it would provide another production
     "no later than the last week of September" while "endeavoring to provide it
     sooner." Two days later, MPI stated that following production of "most if
     not substantially all non-privileged emails and chats (and families) hitting
     on the search terms the week of September 25," it would then "move
     immediately to non-emails/chats hitting on the search terms" as well as
     "production of documents collected ad hoc." That too, never happened, and
     Metacapital was surprised to hear on the December 7 meet-and-confer that
     MPI's personnel still were working on the ad hoc collection, with no
     indication that materials already had been collected.

o    In MPI's September 22 letter to the Court (ECF No. 62), it stated that its
     collection of materials in response to the Court's July 25 Order (ECF No.
     55) was completed on August 16, and it further committed to "provide
     Metacapital frequent and complete updates on all aspects of its document
     review, including the nature and scope of each upcoming production and
     estimated production dates." That did not happen, and the limited
     productions made in the immediate aftermath of the Court's grant of the
     extension leave numerous categories of materials unaddressed.[4]  For
     example, the Court's July 25 Order required MPI to search for and produce
     "all non-privileged, non-work product documents from January 1, 2019
     through June 30, 2023 concerning MPI's plans to offer financial services."
     (ECF No. 55.) Yet Metacapital has seen virtually no such materials.

_____

[3]    It is difficult to imagine, for example, that in response to Metacapital's RFP No. 2,
MPI lacks a significant volume of communications related to its conception, development,
creation, and selection of the term "Meta" for its global, highly publicized rebrand.

[4]    Following the December 1 deficiency letter, MPI suggested that Metacapital should
provide a list of the specific RFPs of concern.  Notwithstanding reservations to engage on
individual RFPs when the issue is MPI's overarching production failures, Metacapital
indulged MPI's request last week.  The email chain including a non-exhaustive list of RFPs
of concern is attached as **Exhibit 1**.  MPI has not addressed those individual RFPs.

Hon. P. Kevin Castel
December 20, 2023
Page 4

- In a November 1 email, MPI specifically represented all of the following, none of which actually happened:

  o   MPI's "next 'big' production will be from our privilege review," and the "review/redaction/logging process" was anticipated to take "2 or 3 more weeks max."

  o   "In the meantime," MPI was "working on breaking out our ad hoc collection so we can make some small productions before then, with the goal of wrapping up the bulk of that phase by the beginning of next month."

  o   There is "another pocket of 500 potentially responsive emails that are going to undergo [counsel's] review next week, with production made soon after."

- MPI finally made a production on December 15, but it contained none of previously promised materials. Instead, MPI produced 58 documents, comprised principally of public materials and screenshots of websites.[5]

In light of the foregoing, both before and after the small December 15 production, Metacapital has pressed for concrete information about the nature and magnitude of forthcoming productions. Metacapital also has expressed concern about counsel's suggestions on the December 7 meet-and-confer that the volume of responsive materials may be far smaller than Metacapital is anticipating, and whether that reflects a disconnect about the heavily negotiated and/or Court-ordered discovery categories. MPI has yet to address those issues (although it has *not* suggested it has any different understanding of the categories) and it is unclear if it will, leaving Metacapital to just wait and see what happens by January 12, the deadline for substantial completion of document productions.

## 2.   *Delays in Resolving Pending Discovery Disputes*

Metacapital devoted countless hours over several months to negotiating resolutions of MPI's discovery objections. A number of those resolutions, however, were expressly subject to Metacapital's review of MPI's production to determine its sufficiency (often at MPI's suggestion that Metacapital review what is produced). MPI's failure to engage in timely production impairs Metacapital's ability to engage in necessary follow-up and determine whether disputes remain.

Some discovery disputes have not even been resolved on an interim basis because MPI has failed to provide promised information. For example, Metacapital has followed up on many occasions regarding its RFP No. 71, which sought various

---

[5]   The remainder of the production was nominally from Beige Key (as discussed below).

Hon. P. Kevin Castel
December 20, 2023
Page 5

historical financial statements. MPI repeatedly indicated that it needed to determine what materials were available before committing to production. On September 26, MPI stated it was "still investigating" but it "*will revert as soon as we can*." On October 5, MPI stated that it "will be complying with [Metacapital's] narrowed request, though we may propose some clarifying language tomorrow based on the results of [MPI']s investigation *which should be done today or tomorrow*." Having heard nothing, Metacapital inquired about the status of RFP 71 on October 12, and was informed on October 17 that MPI was "still collecting documents on RFP 71 in hopes of giving you an accurate explanation of what we have in our written response." On the December 7 meet-and-confer, MPI stated that it *still* was looking into the outstanding questions. That is where the issue remains today.

### 3.     *Delays in Identifying Deposition Witnesses*

Metacapital served its Notice of 30(b)(6) Deposition of MPI on *August 22*. After MPI served objections to topics on September 11, the parties negotiated in good faith, culminating in an October 6 First Amended Notice of Deposition reflecting agreements reached on virtually all of the topics. At that time, and on multiple occasions thereafter, including in emails on October 25, November 7, and November 10, Metacapital requested that MPI identify at least some of its designees. Notably, on November 1, MPI recognized that its designees "are overdue." Still, on November 14, MPI stated only that it "anticipate[s] 3 or 4 designees" but "won't finalize the list until we've interviewed each of them."

On the December 7 meet-and-confer, MPI indicated that it was aware of at least two individuals likely to be designees, but that it needed to confirm whether there were others based on "interviews" taking place that week. On December 11, MPI wrote that it "plans to identify its 3 main 30(b)(6) witnesses this week," while reserving rights to "supplement to the extent alternative witness are identified."

Only on December 19—a day after Metacapital flagged yet another missed MPI deadline—did MPI finally identify three designees. It is unclear to Metacapital whether MPI intends to supplement that list.

### B.     <u>Beige Key Delays</u>

Beige Key is technically a third party notwithstanding the fact that, by all indications, it is inextricably intertwined with MPI and was created solely as a vehicle to acquire "META" trademarks for MPI. Counsel for MPI also represents Beige Key in this litigation, and the same firm acted as Beige Key's representatives and signatories when negotiating with third parties to acquire "META" trademarks.

Metacapital served both document and deposition subpoenas on Beige Key on September 19 (*see* **Exhibits 2 and 3**), in part because Metacapital still had not yet

Hon. P. Kevin Castel
December 20, 2023
Page 6

received information about Beige Key from MPI despite long-pending discovery requests. Both before and after service, Metacapital explained it was not seeking to create unnecessary discovery and thus was open to discussing the subpoenas subject to learning more about Beige Key and the location(s) of responsive materials.

On an October 5 meet-and-confer, Metacapital agreed to an extension until October 13 for Beige Key to serve any objections, and counsel for Beige Key (and MPI) indicated that Beige Key has no personnel, no separate email servers, and no documents of its own (although that understanding seems to have been inaccurate). Counsel further suggested that MPI and Beige Key would designate the same individual on deposition topics, and proposed Metacapital could withdraw the deposition subpoena. Metacapital did not agree to do so, but did agree to postpone the October 20 deposition date so the parties could attempt to resolve open questions.

On October 13, Beige Key served objections to the document subpoena, but did not serve (and has never served) any objections to the deposition subpoena.

Metacapital responded to the objections one week later, noting that it could not gauge the propriety of some proposals and objections (such as that responsive documents would be produced by MPI only) given its lack of understanding of Beige Key and confusion based on counsel's prior statements. Metacapital requested that Beige Key make representations about (1) what documents are within its possession, custody, and control, and whether those also are universally in MPI's possession, custody or control; and (2) whether there exist custodians of Beige Key documents that are not custodians of MPI documents (and vice versa). [6]

Counsel for Beige Key/MPI did not respond, requiring Metacapital to send a follow-up email on November 3. Following another meet-and-confer and letter exchanges—including a November 21 letter from Metacapital that MPI later explained was "lost in the shuffle" when Metacapital inquired as to why no response was received—MPI and Beige Key still did not provide the requested information.

Accordingly, Metacapital is seeking that information—and other discovery— through the previously noticed deposition of Beige Key, and on the December 7 meet-and-confer sought confirmation of a deposition date in mid-January. Beige Key has not yet agreed to a separate deposition, and has suggested that Metacapital must take a single deposition in February of an individual designated by both MPI and Beige Key. This week, Beige Key indicated that it is "considering" filing a motion to quash.

---

[6]     Counsel's own involvement as a business representative of Beige Key (and potentially MPI) in the negotiation of trademark acquisitions from third parties is one of several reasons why Metacapital seeks to better understand the relationship of the companies. Counsel may be fact witnesses, and issues of privilege may turn on their roles for Beige Key, MPI, or both.

Hon. P. Kevin Castel
December 20, 2023
Page 7

Metacapital has since proposed a compromise that a separate Beige Key deposition to take place on January 22 (a date that the witness is available) will be limited to no more than four hours on the record, subject to reserving rights if the designee is not adequately prepared. The deposition will be conducted virtually for convenience.

We understand that Beige Key (and/or MPI) is considering that compromise, but counsel also has stated that the witness "should only be produced once, but unless you agree to that or we receive an order from the Court to that effect, we understand that there will be separate depositions." Metacapital has asked directly whether that means Beige Key will move to quash absent agreement on the four hour limit, and noted that if there is an impasse the parties should seek to resolve it without further delay rather than keep the status of the deposition in limbo. Today we were informed that a decision on that issue still has not been made by Beige Key and MPI, nor has a decision been made about the designee appearing for one deposition or two.[7]

In any event, a motion to quash would be meritless. As an initial matter, such a motion would be untimely; any objections or motion should have been filed months ago and now are waived. *See Bamonte v. Charatan*, 2023 U.S. Dist. LEXIS 192072, at *10-11 (S.D.N.Y. Oct. 18, 2023) ("Pursuant to Rule 45, objections must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. A nonparty that fails to timely and properly object to a subpoena generally waives any objection it may have had."); *United States v. Holland*, 2023 U.S. Dist. LEXIS 180906, at *6-7 (E.D.N.Y. Oct. 6, 2023) (denying motion to quash where nonparty sought adjournment of deposition "but did not object to the subpoena itself in any manner," and "only now . . . takes issue with the subpoena itself . . . months after it had already been issued"). Metacapital is prejudiced otherwise, as it would have promptly sought to resolve any objections in October.

Beyond that, any concerns about inconvenience is a problem of MPI's and Beige Key's own making; nothing compels them to designate the same individual. Metacapital, however, would be prejudiced if required to conflate the two depositions, including because MPI's production relevant to various 30(b)(6) topics remains so scant while the Beige Key deposition is (relatively) ripe. However dubious the distinction between the two companies may be, MPI and Beige Key have relied on that distinction in business dealings and in this litigation,[8] and Metacapital is entitled to seek testimony from each of them without having to repeatedly clarify which

---

[7] For the reasons set forth throughout this letter, Metacapital does not believe it can afford further delay in flagging the issue for the Court as it awaits Beige Key's decision(s).

[8] Last week's production included "Beige Key" materials that plainly are in the possession, custody, and control of MPI and should have been produced months ago. This alone vindicates Metacapital's need to pursue discovery directly from Beige Key.

Hon. P. Kevin Castel
December 20, 2023
Page 8

testimony is on behalf of which entity.  In addition, the deposition topics for the two entities do not entirely overlap; for example, the MPI deposition will address only transactions involving "META" trademarks in the financial services industry, while the Beige Key deposition addresses all acquisitions of "META" trademarks.

      Metacapital respectfully submits that, if not mooted by Beige Key before it files a response to this letter, the status of a separate Beige Key deposition in January should be addressed by the Court now.  Certainly Beige Key should not be permitted to use its corporate existence as both a sword and shield, arguing that it is indistinguishable from MPI for deposition purposes, while at the same time invoking protections against third party discovery under Federal Rule of Civil Procedure 45.[9]

*     *     *     *

      As Metacapital flagged when moving to compel discovery over seven months ago (*see* ECF No. 40 at 1 n.1), MPI's delays have been a major obstacle from the outset of the litigation.  Faced with the prospect of another prejudicial time squeeze, Metacapital cannot again make the mistake of taking MPI (and Beige Key) on faith. We respectfully request that the Court hold a Status Conference to address these issues, and to provide any just and appropriate relief to Metacapital.

      We thank the Court for its time and attention to this matter.

                        Respectfully Submitted,

                        /s Jordan A. Feirman
                        Jordan A. Feirman

cc:  Counsel of Record (via ECF)

---

[9]     Indulging the fiction that Beige Key is acting independently in this litigation, counsel for MPI/Beige Key have argued that Rule 37's fee-shifting provisions do not apply to non-parties but Rule 45 does permit fee shifting against the party serving the subpoena.

# EXHIBIT 1

**From:** Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>
**Sent:** Tuesday, December 12, 2023 7:10 PM
**To:** 'Chanin, Erica' <EChanin@kilpatricktownsend.com>
**Cc:** Crumbley, Louie <lcrumbley@kilpatricktownsend.com>; Poppens-Schultz, Olivia
<OPoppens@kilpatricktownsend.com>; Chollet, Nicki <NChollet@kilpatricktownsend.com>; Flemming,
Forrest <FFlemming@kilpatricktownsend.com>; KTS-Metacapital <KTS-
Metacapital@kilpatricktownsend.com>; Dreyer, Anthony J (NYC) <Anthony.Dreyer@skadden.com>;
Williams, Chad (NYC) <Chad.Williams@skadden.com>; Edlich, Eliza S (NYC) <Eliza.Edlich@skadden.com>
**Subject:** RE: Metacapital v. MPI - Discovery

Erica,

Thank you for the below.  We appreciate the representations and understand that MPI is moving
forward with document review and production, but we remain deeply concerned about two issues:  (1)
the Beige Key deposition; and (2) the apparent anticipated volume of the MPI production.  We address
each in turn:

**1.  Beige Key**

   For reasons previously stated, the time is long overdue to schedule the Beige Key deposition—
especially insofar as you have now explained that the production you anticipate making in the next
several days bears on Beige Key.  We cannot agree to continue to hold the Beige Key deposition date in
limbo.

   The deposition and document subpoenas were served on Beige Key LLC on <u>September 19</u>, with
the deposition noticed for October 20.  Although we agreed to an extension of time for Beige Key to
respond to the subpoenas and noted that we were open to discussing MPI's responses in the context of
"learning more about the relationship between MPI and Beige Key" (*see* my 9/19 email attaching the
notice of subpoena), it has consistently been our position that we would not withdraw the deposition
subpoena even as we agreed to take postpone the October 20 date until after Beige Key served its
objections to the document subpoena (*see, e.g.,* my 10/3 email and Nicki's 10/5 email memorializing our
meet-and-confer).  We responded to Beige Key's objection letter on October 20 -- one week after
receipt – but then did not get a response until <u>November 17</u> despite my November 3 follow-up email.
When we responded only four days later, we heard nothing only to subsequently be informed that our
response was "lost in the shuffle" and thus we did not get a substantive response until December 7.
Even now, MPI and Beige Key have refused to provide written representations confirming information
that was told to us orally in October regarding Beige Key's structure, operations, and personnel—
information that appears to have been inaccurate, as noted in our letters.

   In short, in the nearly three months since the subpoenas were served—and eleven months since
requests for similar documents were served on MPI—Metacapital is only now on the verge of receiving
a small quantity of documents, still lacks any real understanding of Beige Key, and is facing a refusal by
Beige Key to commit to scheduling a deposition a month from now (four months from service of the
subpoena, and sufficiently after the conclusion of the holiday season).  That is not acceptable.
Metacapital needs sufficient time to pursue discovery and follow-up on information that it learns in
advance of the February 26 fact discovery cutoff.

**Please confirm no later than this Thursday whether Beige Key will make its designee(s) available for a deposition on or within a few days of January 12**.  We can conduct the deposition virtually for convenience.

## 2.  Document Production

Candidly, we remain confused about suggestions that MPI's document production may be modest in size and that the production coming in the next several days—the first production by MPI (or Beige Key) in nearly two-and-a-half months—will only be "around 100 documents."  As you have recognized on meet-and-confers (and even months ago was referring to as an explanation as to why production was taking significant time), the scope of materials that MPI has agreed to and/or was ordered to search for and produce is substantial.  While we continue to dispute that Metacapital is under any obligation to list out specific RFPs for which it has not yet received any materials or has received only limited materials, for illustrative purposes we note the following non-exhaustive examples of such RFPs.  The below list summarizes what MPI has agreed to or been ordered to produce (not what the original RFP was, if different):

- **RFP 1:** Documents sufficient to identify the corporate organizational structure of MPI
- **RFP 2:** Documents related to MPI's conception, development, creation, and selection of the term "Meta" for financial goods and services
    - [We have received a few documents related generally to this, but the RFP was not limited to documents sufficient to identify such activities.]
- **RFPs 9-10**: Documents sufficient to show consumer or market studies conducted by or on behalf of MPI concerning the MPI Marks for financial services, and documents "relating to" such consumer or market research.
    - [We note that in a May 3 letter, in response to our raising a concern that we sought documents and communications related to *all* consumer or market studies, you informed us that Metacapital "will receive the requested documents from the time MPI conceived of the rebrand" and that you "trust Metacapital will take a wait-and-see approach to confirm MPI's production."  That was now *seven* months ago.]
- **RFP 12**: Documents identifying third parties who provided marketing or advertising services for MPI in connection with its financial services under MPI Marks.
- **RFPs 13-17:** Documents concerning the PURCHASE AGREEMENT (and specific subcategories of such materials such as the rights transferred, valuations, and payments).
    - [We understand that documents related to this, beyond the Purchase Agreement itself, will be produced soon.  We note the agreed upon categories extended to documents and communications concerning the transaction, and was not limited to documents sufficient to identify certain activities.]
- **RFPs 21-22**:  [As impacted by the Court's July 25 Order]:  Documents concerning MPI's internal valuations of/accounting for/goodwill of MPI Marks used in connection with financial services.
- **RFPs 27-29**: Documents sufficient to identify MPI's bona fide intention to use marks covered by the MPI APPLICATIONS in commerce or in connection with investment management services, financial portfolio services, financial management services [etc.],

and to identify steps taken to market, sell, or offer to sell goods and services in the financial services industry.

- o [MPI listed a spate of goods and services in its trademark application; unless MPI wishes to stipulate that it has no documentation related to any intention to use the marks in connection with those goods or services, Metacapital must pursue these materials.]

- **[Various RFPs impacted by the July 25 Discovery Order, including RFPs 30, 32-33]**:  All documents from 1/1/19 through 6/30/23 concerning MPI's plans to offer financial services, whether or not related to Mark Zuckerberg's testimony.
  - o [On meet-and-confers, you repeatedly recognized the breadth of this Order.]
- **RFP 43:** MPI gross/net revenues, profits, costs, and expenses in connection with provision or sale of goods or services in the financial services sector.
- **RFP 61:** Documents sufficient to identify the nature and scope of MPI's efforts prior to October 28, 2021 to promote, preview, or otherwise generate interest in a rebrand and/or change of the company name from "Facebook."
- **RFP 62**: Documents sufficient to show MPI's reputation among U.S. consumers, including representative examples and summaries of research into consumer sentiment and opinions about MPI, back to January 2021.
  - o [We note that Metacapital reserved rights but agreed to the interim resolution pending review of what was produced based on MPI's representation that it was not cherry picking documents.]
- **RFP 63**:  Documents sufficient to show the number of US customers for all goods and services offered by MPI in the financial services industry.
- **RFPs 64-66**: Documents sufficient to identify MPI's target and actual US users for financial goods and services (both current and future), including but not limited to known demographic and psychographic information.
- **RFP 69**: Monthly revenue, earnings, and profits generated by Meta Financial Technologies.
- **RFP 70**:  Representative examples and summaries of metrics that MPI tracks in connection with advertising, marketing, and promotion of financial services (whether such advertising, marketing and promotion concerns financial services in whole or in part) offered under the MPI Marks in the financial services industry since January 1, 2021.
  - o [In a 10/6 email, MPI noted that the foregoing might not necessarily include the requested category of "documents sufficient to identify the total number of consumer impressions and views for such advertising, marketing, and promotion on an annual basis," because it was not sure how reasonably available those specific metrics are.  Nevertheless, MPI stated "there's no dispute there" and it would provide updates once it knew what the collected metrics are.  MPI has not provided any additional information in over two months despite such representations.]
- **RFP 72**: Documents sufficient to show MPI revenues, expenses, and net profits in connection with offering financial goods and services under MPI Marks in the US.

- o [MPI agreed on a 9/15 meet-and-confer (as memorialized in a 9/16 email), that it would determine whether it had materials sufficient to break down this information by segment.]
- **RFP 73**: All revenue, expense, and profitability projections for MPI actual or anticipated goods and services in the financial services industry, whether developed internally or by third parties.
  - o [Although MPI's last formal objection refused to produce such documents, on a 9/15 meet-and-confer (as memorialized in a 9/16 email), MPI agreed it would produce the documents despite relevance objections ,because the Court's July 25 Discovery Order rendered the objection "moot"].
- **RFP 74**: (1) individually negotiated contracts and agreements concerning the licensing or authorizing of use of MPI Marks or other "Meta"-formative marks (including agreements resulting from disputes concerning financial services), (2) brand guidelines for MPI Marks, and (3) one example of each of MPI's current standard form contracts licensing or authorizing of use of MPI Marks or other "Meta"-formative marks, where such use of an MPI Mark is a central feature of the arrangement.

In addition, and as previously noted, we still lack information concerning **RFP 71** despite assurances in early October that the information was forthcoming.  At minimum, however, MPI already had committed to providing, for the past five years, financial statements for each of is operating segments operating in the financial services industry, including income statements, balance sheets, and cash flow statements.

While it is plausible that MPI may not have documents for *some* of these categories, it is not credible that MPI would have so little for many or most of them.  Nor would that be consistent with messages conveyed to us on numerous phone calls and in meet-and-confers suggesting a large volume (especially with respect to the documents ordered to be produced in the July 25 Discovery Order).  To reiterate, those messages often were relayed as an explanation for why MPI's document review and production was taking so long.

The foregoing is why Metacapital needs more information about what MPI knows it has or believes it is likely to have.  It is not reasonable that Metacapital is continuing to await basic information about MPI's production on the verge of the winter holidays—when our clients will have more limited availability—after making so many of these requests several months ago.  That is particularly the case when Metacapital has agreed to interim resolutions of concerns explicitly pending review of MPI's production in a good faith effort to avoid motion practice.  Indeed, that MPI may believe it will produce limited materials makes us concerned that MPI may disagree about what it agreed to/was ordered to produce.

Accordingly, it is important that MPI promptly provide additional information concerning the magnitude of anticipated production (*e.g.*, the general volume of materials "in process" for production), and if there are particular categories of information listed above for which MPI either (1) it believes it likely has nothing (or little), or (2) MPI has a materially different understanding of what it should be producing and that is impacting its document collection or production, MPI should let us know immediately and provide the complete support for those positions (our positions above are well-rooted in written communications).  **Please provide such information by**

**no later than Friday morning, and I am available to speak on the phone in the interim if that is efficient for you.**

To be clear:  We understand and appreciate that there are always some follow-up inquiries and potential disagreements as discovery unfolds, and we anticipated that the parties may have questions about potential gaps in production.  But as detailed in my December 1 letter and further reflected above, the history of discovery delays in this case have been extreme, and Metacapital must preserve its ability to get fulsome discovery in advance of the February 26 deadline.

We look forward to hearing from you,

**Jordan Feirman**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | 10001
T: 212.735.3067 | F: 917.777.3067
jordan.feirman@skadden.com

**From:** Chanin, Erica <EChanin@kilpatricktownsend.com>
**Sent:** Monday, December 11, 2023 12:00 PM
**To:** Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>
**Cc:** Crumbley, Louie <lcrumbley@kilpatricktownsend.com>; Poppens-Schultz, Olivia <OPoppens@kilpatricktownsend.com>; Chollet, Nicki <NChollet@kilpatricktownsend.com>; Flemming, Forrest <FFlemming@kilpatricktownsend.com>; KTS-Metacapital <KTS-Metacapital@kilpatricktownsend.com>; Dreyer, Anthony J (NYC) <Anthony.Dreyer@skadden.com>; Williams, Chad (NYC) <Chad.Williams@skadden.com>; Edlich, Eliza S (NYC) <Eliza.Edlich@skadden.com>
**Subject:** RE: [Ext] Re: Metacapital v. MPI - Discovery

Good morning, Jordan. I hope you had a good weekend. Responses to your December 7 email are inline and in red for your convenience.

Erica Chanin

echanin@ktslaw.com
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE | Suite 2800 | Atlanta, GA 30309-4528
**T** 404 815 6018 | **F** 404 541 3119
My Profile |  vCard

*Please note that my email address is changing. Please consider adding this new email to your safe senders list, downloading my vCard or sending me an email using the address in my signature line. To learn more about our new visual identity, please visit us online at www.ktslaw.com.*
**From:** Feirman, Jordan <Jordan.Feirman@skadden.com>
**Sent:** Thursday, December 7, 2023 5:07 PM
**To:** Chanin, Erica <EChanin@kilpatricktownsend.com>
**Cc:** Crumbley, Louie <lcrumbley@kilpatricktownsend.com>; Poppens-Schultz, Olivia <OPoppens@kilpatricktownsend.com>; Chollet, Nicki <NChollet@kilpatricktownsend.com>; Flemming, Forrest <FFlemming@kilpatricktownsend.com>; KTS-Metacapital <KTS-Metacapital@kilpatricktownsend.com>; Dreyer, Anthony J <Anthony.Dreyer@skadden.com>; Williams, Chad <Chad.Williams@skadden.com>; Edlich, Eliza S <Eliza.Edlich@skadden.com>
**Subject:** RE: [Ext] Re: Metacapital v. MPI - Discovery

**CAUTION: External Email**

Hi Erica and Nicki,

Thank you for the call earlier today.  While a memorialization of the M&C is forthcoming, we wanted to promptly relay our position with respect to MPI's outstanding discovery—particularly its document production—in the hopes of avoiding court involvement.  If MPI can provide us with reasonably concrete, written representations regarding the following by **no later than Monday (12/11) at Noon ET**, we should be able to resolve this just between the parties:

1. The approximate date and volume of MPI's next "rolling" production.  We understand you cannot commit to (and we are not demanding) an exact date or a precise number of pages.  But the ambiguity of today's statements that the next production would be "in the coming weeks" and that the volume "may not be as much as you are expecting" remain problematic. A few-day window and general order of magnitude should be sufficient.

   <span style="color:red">MPI is confident that it will be producing documents in response to the Beige Key subpoena by Friday or the following Monday at the latest consisting of around 100 documents. We are also working closely with our e-vendor to ensure that production of non-privileged documents will be forthcoming by next week consisting of a few hundred pages of substantive documents.</span>

2. A sense of the types of documents that will be in the next production, meaning formats (emails, non-emails, presentations, etc.) and at least some general notion of the subject matter (market studies, communications about "Meta" assignments, etc.)  We are not asking for anything exhaustive or granular, but we do believe we are entitled to a general understanding of what to expect when this next production finally arrives.

   <span style="color:red">Based on our review of the documents, the upcoming production will consist of emails with attachments concerning Beige Key, corporate formation documents, negotiations concerning the acquisition and lead up to the acquisition and finalization of the acquisition, and the rollout of the Meta brand.</span>

3. A representation that MPI's next production will include responsive, non-privileged documents that have already been reviewed and that MPI is not going to wait to produce such documents until it also makes a production of any privileged documents (*i.e.*, MPI's privilege log and documents redacted due to privilege).  Given that it has been well over two months since MPI's last production, and the volume of materials produced thus far remains so scant, we do not believe it is compliant with the parties' agreement to "rolling" productions that MPI would continue to wait until it has reviewed *all* of the apparently pending documents before producing *any* of them.  Nor is that consistent with specific, written representations made via email over the past few months (set forth in my Dec. 1 letter).

   <span style="color:red">MPI is not withholding documents to produce only when it can produce its privilege log or documents redacted due to privilege. Nor has MPI ever represented that it would have to complete the review of *all* documents before making a production. MPI can say with confidence that it is acting in good faith on the agreement that it is working towards a rolling production and trusts that MC is doing the same. MPI anticipates that by year end it will have produced examples of metrics and is actively identifying financial go and gets to pull for production, among others.</span>

6

4. A representation that the targeted "ad hoc"/"go to get" collection is underway for all categories of materials for which MPI has determined such a search is reasonably necessary, and that MPI understands that although the "substantial completion of production" date is January 12, the parties agreed to rolling productions in advance of that date.

   MPI is actively working to collect the ad hoc/go and get documents and will be making production(s) as documents are collected and confirmed are responsive.

5. Confirmation that Beige Key will agree to a deposition to take place by a mutually agreed upon date no later than January 12, and that Beige Key will identify its designee(s) at least one week in advance of the deposition date.  I note that the deposition notice was served on September 19 and was originally scheduled for October 20, but we agreed to hold it in abeyance in reliance on conversations in early October (including a phone call on October 5) in which we were informed—apparently inaccurately—that Beige Key has no separate documents.

   MPI will be designating the same individual between its 30(b)(6) notice on the topic of Beige Key and any Beige Key deposition. Moreover, given that MPI's production deadline is January 12, we anticipate that its witness on the Beige Key topic will be available after that date.

6. A representation that you will identify the designated 30(b)(6) witness(es) for MPI by no later than next week.

   MPI plans to identify its 3 main 30(b)(6) witnesses this week, but MPI reserves the right to supplement to the extent alternative witnesses are identified.

Thank you, and we look forward to hearing back.  I am available to discuss further if you would like.

Best,

**Jordan Feirman**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | 10001
T: 212.735.3067 | F: 917.777.3067
jordan.feirman@skadden.com

**From:** Feirman, Jordan (NYC)
**Sent:** Wednesday, December 6, 2023 7:54 PM
**To:** 'Chanin, Erica' <EChanin@kilpatricktownsend.com>
**Cc:** Crumbley, Louie <lcrumbley@kilpatricktownsend.com>; Poppens-Schultz, Olivia <OPoppens@kilpatricktownsend.com>; Chollet, Nicki <NChollet@kilpatricktownsend.com>; Flemming, Forrest <FFlemming@kilpatricktownsend.com>; KTS-Metacapital <KTS-Metacapital@kilpatricktownsend.com>; Dreyer, Anthony J (NYC) <Anthony.Dreyer@skadden.com>; Williams, Chad (NYC) <Chad.Williams@skadden.com>; Edlich, Eliza S (NYC) <Eliza.Edlich@skadden.com>
**Subject:** RE: [Ext] Re: Metacapital v. MPI - Discovery

Thanks Erica, that works for me.  I'll circulate an invite with the Zoom information.

**Jordan Feirman**
**Skadden, Arps, Slate, Meagher & Flom LLP**

One Manhattan West | New York | 10001
T: 212.735.3067 | F: 917.777.3067
jordan.feirman@skadden.com

**From:** Chanin, Erica <EChanin@kilpatricktownsend.com>
**Sent:** Wednesday, December 6, 2023 7:43 PM
**To:** Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>
**Cc:** Crumbley, Louie <lcrumbley@kilpatricktownsend.com>; Poppens-Schultz, Olivia <OPoppens@kilpatricktownsend.com>; Chollet, Nicki <NChollet@kilpatricktownsend.com>; Flemming, Forrest <FFlemming@kilpatricktownsend.com>; KTS-Metacapital <KTS-Metacapital@kilpatricktownsend.com>; Dreyer, Anthony J (NYC) <Anthony.Dreyer@skadden.com>; Williams, Chad (NYC) <Chad.Williams@skadden.com>; Edlich, Eliza S (NYC) <Eliza.Edlich@skadden.com>
**Subject:** [Ext] Re: Metacapital v. MPI - Discovery

Thanks, Jordan. Tomorrow at 11 am works for us.

On Dec 6, 2023, at 6:00 PM, Feirman, Jordan <Jordan.Feirman@skadden.com> wrote:

Thanks Erica.  We understand that things can get lost in the shuffle, and appreciate you letting us know that's what happened.  Please let me know your availability tomorrow for a meet-and-confer regarding the concerns Metacapital has raised about MPI's discovery to date in last week's letter.  If tomorrow is not workable, please let me know available windows Friday morning.

Best,

**Jordan Feirman**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | 10001
T: 212.735.3067 | F: 917.777.3067
jordan.feirman@skadden.com

**From:** Chanin, Erica <EChanin@kilpatricktownsend.com>
**Sent:** Wednesday, December 6, 2023 8:51 AM
**To:** Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>; Crumbley, Louie <lcrumbley@kilpatricktownsend.com>; Poppens-Schultz, Olivia <OPoppens@kilpatricktownsend.com>; Chollet, Nicki <NChollet@kilpatricktownsend.com>; Flemming, Forrest <FFlemming@kilpatricktownsend.com>
**Cc:** KTS-Metacapital <KTS-Metacapital@kilpatricktownsend.com>; Dreyer, Anthony J (NYC) <Anthony.Dreyer@skadden.com>; Williams, Chad (NYC) <Chad.Williams@skadden.com>; Edlich, Eliza S (NYC) <Eliza.Edlich@skadden.com>
**Subject:** [Ext] RE: Metacapital v. MPI - Discovery

Thanks, Jordan. We are in receipt of your letter. Given the timeframe in which it was sent, just days before Thanksgiving, it got lost in the shuffle. We have a substantive response in the works and will have that to you shortly.

Best,
Erica

Erica Chanin

8

echanin@ktslaw.com
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE | Suite 2800 | Atlanta, GA 30309-4528
**T** 404 815 6018 | **F** 404 541 3119
My Profile | vCard

*Please note that my email address is changing. Please consider adding this new email to your safe senders list, downloading my vCard or sending me an email using the address in my signature line. To learn more about our new visual identity, please visit us online at www.ktslaw.com.*

**From:** Feirman, Jordan <Jordan.Feirman@skadden.com>
**Sent:** Tuesday, December 5, 2023 3:32 PM
**To:** Crumbley, Louie <lcrumbley@kilpatricktownsend.com>; Chanin, Erica <EChanin@kilpatricktownsend.com>; Poppens-Schultz, Olivia <OPoppens@kilpatricktownsend.com>; Chollet, Nicki <NChollet@kilpatricktownsend.com>; Flemming, Forrest <FFlemming@kilpatricktownsend.com>
**Cc:** KTS-Metacapital <KTS-Metacapital@kilpatricktownsend.com>; Dreyer, Anthony J <Anthony.Dreyer@skadden.com>; Williams, Chad <Chad.Williams@skadden.com>; Edlich, Eliza S <Eliza.Edlich@skadden.com>
**Subject:** RE: Metacapital v. MPI - Discovery

Thank you.  Counsel - We reserve all rights as we review your letter, but in the interim I note that we responded to your November 17 letter regarding Beige Key on November 21.  That letter was sent in a reply to Erica's email attaching the November 17 letter, and therefore went to the "KTS-Metacapital" and "1350952 – META CAPITAL V. META PLATFORMS" lists, as well as separately and individually to Erica, Nicki, Olivia, and Jessica.  That email (with the letter) is attached again here.   If you are representing that it was never received, then of course we will take you at your word.   But short of that, we must assume that you did receive it and it was simply overlooked.

Best,

**Jordan Feirman**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | 10001
T: 212.735.3067 | F: 917.777.3067
jordan.feirman@skadden.com

**From:** Crumbley, Louie <lcrumbley@kilpatricktownsend.com>
**Sent:** Tuesday, December 5, 2023 3:15 PM
**To:** Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>; Chanin, Erica <EChanin@kilpatricktownsend.com>; Poppens-Schultz, Olivia <OPoppens@kilpatricktownsend.com>; Chollet, Nicki <NChollet@kilpatricktownsend.com>; Flemming, Forrest <FFlemming@kilpatricktownsend.com>
**Cc:** KTS-Metacapital <KTS-Metacapital@kilpatricktownsend.com>; Dreyer, Anthony J (NYC) <Anthony.Dreyer@skadden.com>; Williams, Chad (NYC) <Chad.Williams@skadden.com>; Edlich, Eliza S (NYC) <Eliza.Edlich@skadden.com>
**Subject:** [Ext] RE: Metacapital v. MPI - Discovery

Counsel,

Please see the attached.

Regards,

Louie Crumbley

**Paralegal**
lcrumbley@ktslaw.com
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE | Suite 2800 | Atlanta, GA 30309-4528
**T** 404 685 6769 | **M** 404 307 6391 | **F** 404 541 3355
www.ktslaw.com | vCard

*Please note that my email address is changing. Please consider adding this new email to your safe senders list, downloading my vCard or sending me an email using the address in my signature line. To learn more about our new visual identity, please visit us online at www.ktslaw.com.*

**From:** Feirman, Jordan <Jordan.Feirman@skadden.com>
**Sent:** Friday, December 1, 2023 4:01 PM
**To:** Chanin, Erica <EChanin@kilpatricktownsend.com>; Poppens-Schultz, Olivia <OPoppens@kilpatricktownsend.com>; Chollet, Nicki <NChollet@kilpatricktownsend.com>; Flemming, Forrest <FFlemming@kilpatricktownsend.com>
**Cc:** KTS-Metacapital <KTS-Metacapital@kilpatricktownsend.com>; Dreyer, Anthony J <Anthony.Dreyer@skadden.com>; Williams, Chad <Chad.Williams@skadden.com>; Edlich, Eliza S <Eliza.Edlich@skadden.com>
**Subject:** Metacapital v. MPI - Discovery

Counsel,

Please see the attached letter concerning discovery.

Best,

**Jordan Feirman**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | 10001
T: 212.735.3067 | F: 917.777.3067
jordan.feirman@skadden.com

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===========================================================================

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY

PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

---

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===========================================================================

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===========================================================================

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===========================================================================

# EXHIBIT 2

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| METACAPITAL MANAGEMENT, L.P., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:22-CV-07615 (PKC) |
| META PLATFORMS, INC., | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Beige Key LLC
c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Skadden, Arps, Slate, Meagher & Flom LLP<br>One Rodney Square<br>Wilmington, DE 19801 | Date and Time:<br><br>October 3, 2023 at 5:00 PM ET |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   9/19/2023

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Anthony J. Dreyer |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Metacapital Management, L.P.                                                  , who issues or requests this subpoena, are:

Anthony J. Dreyer; One Manhattan West, New York, NY 10001-8602; anthony.dreyer@skadden.com; (212) 735-3097

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:22-CV-07615 (PKC)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | | Reset |

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## INSTRUCTIONS AND DEFINITIONS

1.      The uniform definitions and rules of construction set forth in Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York are incorporated herein by reference.

2.      Documents produced in response to these requests should be provided in the same form in which they are kept and, where attached, should not be separated or disassembled. Electronic data should be produced in electronic form.

3.      If any portion of a document is considered responsive to any Request, the Request shall be construed as requesting production of the entire document, without abbreviation or redaction.  All drafts and non-identical copies of each document must be produced.

4.      A copy of the Stipulated Protective Order entered in the current litigation is attached hereto.  To the extent that certain responsive documents contain confidential or sensitive information, you may designate such documents with an appropriate confidentiality designation pursuant to the Protective Order.  Materials may <u>not</u> be redacted or withheld on the basis that the materials contain confidential or sensitive information.

5.      If any document requested herein is withheld or redacted on the basis of any claim of privilege, you shall identify the nature of the privilege being claimed, and provide all required information set forth in the Federal Rules of Civil Procedure and Rule 26.2 of the Local Rules of the Southern District of New York (available at <u>https://www.nysd.uscourts. gov/sites/default/files/local_rules/2021-10-15%20Joint%20Local%20Rules.pdf</u>),   including: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the

document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

6.      "YOU," "YOUR," and "BEIGE KEY" refer to Beige Key LLC, its direct and indirect subsidiaries; divisions; predecessor, related, and successor companies; affiliates; parents; any partnership or joint venture to which it may be a party; and/or each of the foregoing entities' employees, agents, officers, directors, representatives, consultants, accountants, and attorneys.

7.      "MPI" refers to Meta Platforms, Inc., its direct and indirect subsidiaries; divisions; predecessor, related, and successor companies (including but not limited to Facebook, Inc.); affiliates; parents; and/or each of the foregoing entities' employees, agents, officers, directors, representatives, consultants, accountants, and attorneys.

8.      "META FINANCIAL" means Meta Financial Group, Inc.; MetaBank, N.A.; Pathward, N.A.; Pathward Financial, Inc.; and any known affiliates of any of the foregoing entities.

9.      "PURCHASE AGREEMENT" refers to the Purchase Agreement between META FINANCIAL on the one hand, and BEIGE KEY on the other hand, as disclosed in the December 13, 2021 Form 8-K filing by META FINANCIAL with the U.S. Securities and Exchange Commission.

10.      "META TRANSACTION(S)" refers to any and all transaction(s) (including surrounding circumstances and related agreements) in which YOU were involved concerning the acquisition, assignment, licensing, or any other disposition of "Meta" or "Meta"-formative names, brands, or trademarks, including but not limited to any such transactions involving META FINANCIAL and/or MPI.

2

## **DOCUMENTS TO BE PRODUCED**

1.      Documents sufficient to identify all reasons why BEIGE KEY was formed, and the nature and complete scope of BEIGE KEY's operations.

2.      Documents establishing the formation and governance of BEIGE KEY (*e.g.*, charters, bylaws, filings with state or federal agencies).

3.      Documents sufficient to identify all past and present BEIGE KEY owner(s), management, and personnel, including employees, officers, directors, and board members.

4.      Documents sufficient to show the complete nature of any corporate relationship between BEIGE KEY and MPI.

5.      All contracts and agreements concerning META TRANSACTIONS.

6.      Documents sufficient to identify the source of all funding and/or payments involving BEIGE KEY in connection with META TRANSACTIONS.

7.      All documents concerning transactions with META FINANCIAL, including but not limited to all communications and agreements with META FINANCIAL and/or MPI with respect to such transactions, and communications concerning the PURCHASE AGREEMENT and/or any of the terms, obligations, or representations contained therein.[1]

8.      To the extent not produced in response to other Requests, documents concerning the value or valuation of any and all rights, titles, and interests conveyed in META TRANSACTIONS.

---

[1]    For avoidance of doubt, this request calls for all responsive documents irrespective of whether they were created before or after the execution of the PURCHASE AGREEMENT.  To reduce any burdens in creating a privilege log, this Request can be construed to exclude privileged communications solely between BEIGE KEY and its own (*i.e.*, *Beige Key LLC's*) counsel.

9.      Documents sufficient to identify any of YOUR efforts to determine whether acquisition or use of "Meta" or "Meta"-formative names, brands, or trademarks in connection with financial goods and services would violate other parties' intellectual property rights, and determinations or conclusions resulting from those efforts.

10.     All documents concerning "Metacapital" or Metacapital Management, L.P.

11.     All communications with other parties (including MPI) concerning disputes regarding "Meta" or "Meta"-formative names, brands, or trademarks.

# EXHIBIT 3

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Southern District of New York

| | | |
|---|---|---|
| METACAPITAL MANAGEMENT, L.P., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:22-CV-07615 (PKC) |
| | ) | |
| META PLATFORMS, INC., | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Beige Key LLC
c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment A.

| Place:  Skadden, Arps, Slate, Meagher & Flom LLP | Date and Time: |
|---|---|
| One Rodney Square, Wilmington, DE 19801 | October 20, 2023 at 9:30 AM ET |

The deposition will be recorded by this method:   Stenographic, Audio-Visual

❑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      9/19/2023

|  | | |
|---|---|---|
| *CLERK OF COURT* | OR | /s/ Anthony J. Dreyer |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Metacapital Management, L.P.                                                           , who issues or requests this subpoena, are:

Anthony J. Dreyer; One Manhattan West, New York, NY 10001-8602; anthony.dreyer@skadden.com; (212) 735-3097

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:22-CV-07615 (PKC)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows:

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | Reset |

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## INSTRUCTIONS AND DEFINITIONS

1.    Pursuant to Federal Rule of Civil Procedure 30(b)(6), Beige Key LLC must designate one or more officers, directors, managing agents, or other persons who consent to testify on Beige Key LLC's behalf, to testify about information known or reasonably available to Beige Key LLC with respect to the Topics for Examination listed below.

2.    "YOU," "YOUR," and "BEIGE KEY" refer to Beige Key LLC, its direct and indirect subsidiaries; divisions; predecessor, related, and successor companies; affiliates; parents; any partnership or joint venture to which it may be a party; and/or each of the foregoing entities' employees, agents, officers, directors, representatives, consultants, accountants, and attorneys.

3.    "MPI" refers to Meta Platforms, Inc., its direct and indirect subsidiaries; divisions; predecessor, related, and successor companies (including but not limited to Facebook, Inc.); affiliates; parents; and/or each of the foregoing entities' employees, agents, officers, directors, representatives, consultants, accountants, and attorneys.

4.    "META FINANCIAL" means Meta Financial Group, Inc.; MetaBank, N.A.; Pathward, N.A.; Pathward Financial, Inc.; and any known affiliates of any of the foregoing entities.

5.    "PURCHASE AGREEMENT" refers to the Purchase Agreement between META FINANCIAL on the one hand, and BEIGE KEY on the other hand, as disclosed in the December 13, 2021 Form 8-K filing by META FINANCIAL with the U.S. Securities and Exchange Commission.

6.     "META TRANSACTION(S)" refers to any and all transaction(s) (including surrounding circumstances and related agreements) in which YOU were involved concerning the acquisition, assignment, licensing, or any other disposition of "Meta" or "Meta"-formative names, brands, or trademarks, including but not limited to any such transactions involving META FINANCIAL and/or MPI.

### TOPICS FOR EXAMINATION

1.     The formation of BEIGE KEY and all reasons therefor.

2.     The nature and scope of BEIGE KEY's business and operations.

3.     BEIGE KEY's corporate structure and relationship(s) with MPI.

4.     BEIGE KEY's owner(s), management, and personnel.

5.     The conception, development and negotiation of META TRANSACTIONS.

6.     META TRANSACTIONS pertaining to rights acquired from META FINANCIAL, including but not limited to the development, negotiation, and drafting of the PURCHASE AGREEMENT and any agreements with MPI pertaining thereto.

7.     The role of MPI in connection with META TRANSACTIONS, including specifically such transactions involving META FINANCIAL.

8.     The value and/or valuations of rights, titles, and interests, conveyed in META TRANSACTIONS.

9.     BEIGE KEY's document storage and maintenance systems (*e.g.*, physical and electronic files, email servers), including any shared systems with MPI.