Case 1:22-cv-07615-PKC-KHP   Document 82   Filed 02/23/24   Page 1 of 3

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

---

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
-----
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
-----
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3067
DIRECT FAX
917-777-3067
EMAIL
JORDAN.FEIRMAN@SKADDEN.COM

February 23, 2024

**BY ECF**
Honorable Katherine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 750
New York, New York 10007

     RE:    *Metacapital Mgmt, L.P. v. Meta Platforms, Inc.*, No. 1:22-cv-7615

Dear Judge Parker:

     We write on behalf of Metacapital Management L.P. ("**Metacapital**") to request a premotion conference in connection with a motion to compel Meta Platforms, Inc. ("**MPI**") to disclose information that MPI has refused to provide based on improper assertions of privilege and work product. Although the parties continue to engage on a number of MPI's assertions (including that Metacapital awaits numerous promised documents with amended redactions)—a meet-and-confer on February 19 confirmed an impasse on the issues herein. MPI's positions prevented Metacapital from securing fulsome testimony from at least one Rule 30(b)(6) designee, and at least one upcoming deposition will be dramatically impacted by any Court guidance on the privilege claims.

     On February 7, Metacapital deposed Scott Minden, an MPI in-house counsel designated as a representative by both MPI and Beige Key LLC, a subsidiary created to acquire "Meta" marks from third parties. Mr. Minden's designated topics related to, *inter alia*: (i) MPI's acquisition of marks, including a $60 million acquisition of "Meta" marks for financial services from MetaBank N.A.; (ii) MPI's intent-to-use ("ITU") applications for "Meta" marks; and (iii) certain disputes concerning "Meta" marks. Mr. Minden also was deposed in his individual capacity, and acknowledged his personal involvement with respect to each of the foregoing categories. Indeed, Mr. Minden signed the declarations to the U.S. Trademark Office supporting MPI's ITU applications.

     At deposition, however, Mr. Minden refused to answer a variety of questions related to the foregoing topics, including without limitation the following:

- ***How MPI arrived at the $60 million price for MetaBank's "Meta" trademarks, including decisions regarding*** ▆▆▆▆. Despite the fact that the price was negotiated ▆▆▆▆, Mr. Minden asserted that ▆▆▆▆ (Tr. at 80:17-83:17.)[1] This was part of a broader strategy to avoid disclosure, as Mr. Minden relied on a misleading statement that MPI ▆▆▆▆ and refused to answer questions regarding why MPI was willing to pay what it did other than vague and general references to ▆▆▆▆ (Tr. at 72:14-73:5.)[2] Mr. Minden even refused to acknowledge, in the abstract, ▆▆▆▆ (Tr. at 155:25-160:18.)

- ***Bases for MPI's representations to the Trademark Office and TTAB.*** In its ITU applications, MPI made representations regarding its purported bona fide intent to use "Meta" marks in connection with a vast array of financial services, including services offered by Metacapital. While it appears clear to Metacapital that no such bona fide intent existed given Mr. Minden's ▆▆▆▆ he notably refused to answer questions regarding ▆▆▆▆. Using privilege as a sword and shield, Mr. Minden ▆▆▆▆ but refused to answer ▆▆▆▆ (Tr. at 269:20-271:18.) Relatedly, Mr. Minden was asked about whether ▆▆▆▆—a key issue given MPI's focus throughout the litigation on a purported distinction between "Metacapital" and "Meta" marks. In another "sword and shield" strategy, however, Mr. Minden ▆▆▆▆ (Tr. at 239:3-240:17; 363:3-22.) Nor would Mr. Minden address numerous public filings where MPI ▆▆▆▆ (Tr. at 244:16-247:20.) Mr. Minden similarly refused to explain the factual bases for the company's public allegations that ▆▆▆▆ (Tr.

---

[1] Relevant excerpts of the deposition ("Tr.") are included in Exhibit A.

[2] Mr. Minden even refused to answer questions about whether there was any factual basis for a statement ▆▆▆▆ ▆▆▆▆ (Tr. at 356:13-358:21.)

at 248:5-249:18), even as MPI assaults Metacapital's assertion that its own reputation is being injured by MPI's infringing activities.

"[T]he attorney client privilege protects communications . . . for the purpose of obtaining or providing legal advice." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 390 (S.D.N.Y. 2015). That MPI appears to have its legal team(s) handle many *business functions* ▮▮▮▮▮ does not render those business functions "legal advice;" to the contrary, authorities are clear that business communications do not become protected solely because they involve legal personnel, and that courts must instead look to the "predominant purpose" of the communication. *See, e.g., Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19 Civ. 9193, 2023 WL 315072 at *7 (S.D.N.Y. Jan. 19, 2023) ("Because in-house lawyers often perform both legal and business functions, 'communications between a corporation's employees and its in-house counsel . . . must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice[,]' with only the latter being protected by the attorney-client privilege." (citation omitted)); *Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp.*, No. 93 Civ. 5125, 1996 WL 29392 (S.D.N.Y. Jan. 25, 1996) (compelling testimony of counsel acting as a negotiator). Nor can MPI use privilege to stand by public statements but refuse to explain their bases, or to testify what its activity in the Trademark Office does *not* mean yet refuse to answer what it *does* mean.

MPI's frequent assertions of *attorney work product* during Mr. Minden's deposition to shield a variety of information related to ▮▮▮▮▮ also made no sense. (*See, e.g.,* Tr. at 171:20-172:6; 369:21-370:7.) Work product provides certain protection for materials created in anticipation of litigation—meaning those "prepared 'because of' existing or expected litigation." *United States v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998). Mr. Minden acknowledged that ▮▮▮▮▮



▮▮▮▮▮ (Tr. at 187:20-191:7), yet work product was asserted as grounds for refusals to provide information ▮▮▮▮▮. Worse, Metacapital was obstructed from further probing any foundation for supposed work product, as counsel improperly instructed Mr. Minden not to answer a direct question ▮▮▮▮▮ (*Id.*)

Metacapital welcomes the opportunity to discuss the issue with Your Honor and provide additional information and authorities to fully flesh out its positions.

Respectfully Submitted,

*/s Jordan A. Feirman*
Jordan A. Feirman

cc: All counsel of record (via ECF)